Nick MEYROVICH, Petitioner,

v.

Manfred MAASS, Superintendent, Oregon State Penitentiary, and Vern Faatz, Chairman, Oregon State Board of Parole, Respondents.

Civ. No. 89–6363–JO.

United States District Court,
D. Oregon.

Feb. 26, 1991.

Steven T. Wax, Federal Public Defender, Portland, Or., for petitioner.

Lynn David Larsen, Asst. Atty. Gen., Dept. of Justice, Salem, Or., for respondents.

## ORDER

ROBERT E. JONES, District Judge:

Petitioner is in the custody of the Oregon Department of Corrections after conviction in Marion County for two counts of attempted sodomy in the first degree. In this proceeding, petitioner attacks the "adjusted commitment date" the Oregon Board of Parole (Board) used to set his parole release date on the two attempted sodomy convictions. Petitioner directly appealed the order, but the Oregon Court of Appeals affirmed without opinion. *Meyrovich v. State Board of Parole*, 95 Or.App. 132, 769 P.2d 807 (1989). The Oregon Supreme Court denied review. 308 Or. 331, 780 P.2d 222 (1989).

Pursuant to 28 U.S.C. § 2254(b), a petitioner must exhaust his state remedies be-

fore a habeas corpus petition can be granted. State remedies are deemed exhausted "once the claim has been fairly presented to the highest court of the state." *Schwartzmiller v. Gardner,* 752 F.2d 1341, 1344 (9th Cir.1984). Petitioner has thus exhausted his state remedies with respect to the issue raised in his habeas petition. Respondent so concedes, Respondent's Answer at 2, and move for an order denying habeas relief.

*Background*

In 1980, petitioner was sentenced in Deschutes County for various offenses. He was paroled on December 27, 1986. On February 2, 1987, petitioner was arrested and charged in Marion County with two counts of first degree rape and two counts of first degree sodomy as well as a parole violation. These alleged crimes apparently took place sometime between the end of November, 1986 and January, 1987. *See Meyrovich v. Oregon State Board of Parole,* Appeal Record to Oregon Court of Appeals at 6–8. On March 10, 1987, the Board revoked his parole on the Deschutes County convictions and set a new parole release date of February 1, 1988.

On June 9, 1987, petitioner pled guilty in Marion County to two counts of attempted sodomy in the first degree. The Marion County trial court sentenced petitioner to two consecutive sentences of ten years imprisonment with minimums of five years, with the sentences to run consecutive to any other sentences petitioner was then serving. On April 6, 1988, after petitioner's conviction on the Marion County crimes, the Board set February 1, 1988 as the "adjusted commitment date," the date to begin running the Marion County Convictions. The Board also overrode one of the five-year minimum sentences and set a parole release date of January 13, 1993. This release date was five years from the adjusted commitment date of February 1, 1988.

The Board based its determination upon OAR 255–35–022(8) (amended) (temporarily adopted on June 8, 1987, June 18, 1987, July 21, 1987; permanently adopted May 19, 1988). The rule provides:

When additional sentences are imposed for crimes which took place after the period considered at a prior prison term hearing and the additional sentences are consecutive to the crimes already considered, the matrix range for the additional crimes shall be established as if it were a new sentence. If the inmate has not yet been released on parole, the commencement date for the new crimes shall be the parole release date established at the previous prison term hearing.

The former rule provided in pertinent part:

(8) When a sentence has been imposed consecutive to one already being served by a parolee, the range for the first sentence shall be the time served prior to revocation:

(a) If a single consecutive sentence is imposed, the prison term shall be established as for a single new sentence and the provisions of this rule shall not apply. The Board may consider it an aggravating factor if a new sentence is imposed consecutively to a parole violation commitment;

(b) If more than one sentence is imposed consecutively, the provisions of this rule shall be followed as to all new sentences.

OAR 255–35–022(8).

Petitioner claims that his adjusted commitment date should have been determined under the former version of the rule. The Marion County trial court sentenced petitioner to two consecutive sentences for his criminal conduct while on parole and ordered the sentences to run consecutive to any other sentences petitioner was then serving. Pursuant to the former rule, the range for petitioner's sentence for the Deschutes County convictions would be converted to "time served prior to revocation." This would make petitioner entitled to an adjusted commitment date of March 10, 1987, the date his parole on the Deschutes County convictions was revoked. Consequently, petitioner's parole release date would be in March, 1992 rather than January 31, 1993.

In May 1990, the Board ruled to override both minimum five year terms and set a prison term of 48 months. That estab-

lished a release date of January 31, 1992. The Board still used the February 1, 1988 adjusted commitment date (now apparently called "adjusted inception date") to make its determination of the release date. If the Board had used the March 10, 1987 parole revocation date, petitioner's release date would be March, 1991 rather than January 31, 1992.

*Discussion*

Petitioner contends that the Board violated his rights under the *ex post facto* provision of the United States Constitution. According to petitioner, the Board denied him due process by retroactively using an amended administrative rule to determine his sentence commitment date.

■ The *ex post facto* provision of Article I, § 10, cl. 1 of the United States Constitution forbids Congress and the states from passing any law " 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.' " *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (citation omitted). The purposes of the clause are to provide fair warning of legislative statutes and to prevent arbitrary and potentially vindictive legislation. *Id.* at 28–29, 101 S.Ct. at 963–64. "The actual state of the law at the time a defendant commits the offense is determinative of whether he had fair notice of the consequences of his actions." *Watson v. Estelle*, 886 F.2d 1093, 1096 (9th Cir.1989). In accord with these purposes, there are "two critical elements [that] must be present for a criminal or penal law to be *ex post facto:* it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver, supra,* 450 U.S. at 29, 101 S.Ct. at 964.

To determine whether a law is retrospective, "[t]he critical question is whether the law changes the legal consequences of acts completed before its effective date." *Id.* The court must examine whether the provision "substantially alters the consequences attached to a crime already completed, and therefore changes ' "the quantum of pun-ishment." ' " *Id.* at 33, 101 S.Ct. at 966 (quoting *Dobbert v. Florida,* 432 U.S. 282, 293–94, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977)). The court, however, need not determine whether the result of the provision "was in some technical sense part of the sentence to conclude that it in fact is one determinant of petitioner's prison term— and that his effective sentence is altered once this determinant is changed." *Id.,* 450 U.S. at 32, 101 S.Ct. at 966. "[A] statute may [thus] be retrospective even if it alters punitive conditions outside the sentence." *Id.* at 32, 101 S.Ct. at 966. A retrospective law can only be constitutionally applied to petitioner if it is "not to his detriment." *Id.* at 33, 101 S.Ct. at 966. The new provision cannot make "more onerous the punishment for crimes committed before its enactment." *Id.* at 36, 101 S.Ct. at 968.

■ The Supreme Court has also held that "even if a law operates to the defendant's detriment, the *ex post facto* prohibition does not restrict " 'legislative control of remedies and modes of procedure which do not affect matters of substance.' " *Miller v. Florida,* 482 U.S. 423, 433, 107 S.Ct. 2446, 2452, 96 L.Ed.2d 351 (1987) (quoting *Dobbert, supra,* 432 U.S. at 293, 97 S.Ct. at 2298). There is no *ex post facto* violation if the change in the law is simply procedural and does " 'not increase the punishment, nor change the ingredients of the offence or the ultimate facts necessary to establish guilt.' " *Id.* (quoting *Hopt v. Utah,* 110 U.S. 574, 590, 4 S.Ct. 202, 210, 28 L.Ed. 262 (1884)). Furthermore, the effect rather than the form of the law determines whether the provision is *ex post facto.* A change in the law that alters substantial rights can be *ex post facto* "even if the statute takes a seemingly procedural form." *Weaver, supra,* 450 U.S. at 29, n. 12, 101 S.Ct. at 964, n. 12.

■ Respondent first contends that the *ex post facto* analysis does not apply because administrative rules are at issue and further, that even if *ex post facto* analysis were appropriate, the particular administrative rule at issue in this case was not a proper exercise of the Board's statutory

authority. The Oregon courts have addressed both of these issues.

The United States Supreme Court has noted that "state courts are the ultimate expositors of state law ... and we are bound by their constructions except in extreme circumstances." *Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 1886, 44 L.Ed.2d 508 (1975). *See also Brown v. Ohio,* 432 U.S. 161, 167, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977) (state courts " 'have final authority to interpret ... that State's legislation' ") (citation omitted); *Watson, supra,* 886 F.2d at 1095 (" 'in applying the *ex post facto* prohibition of the Federal Constitution to state laws, [a federal court] accepts the meaning ascribed to them by the highest court of the state' ") (quoting *Lindsey v. Washington,* 301 U.S. 397, 400, 57 S.Ct. 797, 798, 81 L.Ed. 1182 (1937)). However, once the meaning of the state laws is established, the question of "[w]hether a retrospective criminal statute ameliorates or worsens conditions imposed by its predecessor is a federal question." *Weaver, supra,* 450 U.S. at 33, 101 S.Ct. at 966. *See also Lindsey, supra,* 301 U.S. at 400, 57 S.Ct. at 798 (federal court must determine "whether the standards of punishment set up before and after the commission of an offense differ, and whether the later standard is more onerous than the earlier within the meaning of the constitutional prohibition").

In *Williams v. Board of Parole,* 98 Or. App. 716, 719–20, 780 P.2d 793, 794–95 (1989), *rev. denied,* 309 Or. 522, 789 P.2d 1387 (1990), the Oregon Court of Appeals specifically held that Board rules that govern the setting of parole release dates are "laws" within the meaning of the relevant constitutional provisions. The court further held that "an *ex post facto* analysis applies to Board rules that govern the setting of a parole release date, under both the Oregon and federal constitutions," because the Board derives its rulemaking authority from statutes, and, through its rules governing release dates, the Board "affects the amount of freedom or punishment that a prisoner in fact receives." *Id.* at 720, 780 P.2d at 795.

Respondent cites to *Wallace v. Christensen,* 802 F.2d 1539 (9th Cir.1986), where the court found that the 1983 federal Parole Guidelines were not "laws for purposes of the *ex post facto* clause." Respondent concedes that *Wallace* is not on point but claims that it shows there are differences between legislative enactments and administrative rules. Respondent's Memorandum in Support of Motion to Deny Habeas Relief at 11. That may be true, but this court is bound by Oregon's interpretation of its own laws and Oregon has determined that Board rules are "laws" and as such are governed by the *ex post facto* clause. *See Miller, supra,* 482 U.S. at 434–35, 107 S.Ct. at 2453 (federal parole guidelines cases inapposite because Florida revised sentencing law is enacted by Florida Legislature and it has force and effect of law).

■ Respondent also argues that the former rule was not a proper exercise of the Board's statutory authority and therefore it would be "anomalous to apply an *ex post facto* analysis to an administrative rule on the basis that the agency was delegated legislative authority, when the rule in question was not a valid exercise of the authority that had been delegated by the legislature." Respondent's Memorandum at 10–11. Respondent contends that the former rule was contrary to various statutes in effect at the time of the former rule.

In *Roof v. Board of Parole,* 85 Or.App. 188, 736 P.2d 193 (1987), the Oregon Court of Appeals held that OAR 255–35–022(8) (former) applied to the determination of petitioner's adjusted commitment date. The court remanded to the Board to set the commitment date pursuant to OAR 255–35–022(8) (former). Respondent contends that *Roof* should not be read as authorizing continued use of the rule because the court did not discuss the statutory authority issue. However, implicit in the Court of Appeals Action is that the court accepted the validity of the rule. In *Roof,* the Oregon Court of Appeals has accepted and applied the rule. As noted above, this court is bound by Oregon's interpretation of its own laws. A federal court "may

intervene in the state judicial process only to correct wrongs of a constitutional dimension." *Wainwright v. Goode*, 464 U.S. 78, 83, 104 S.Ct. 378, 382, 78 L.Ed.2d 187 (1983).[1]

■ Thus, under Oregon law, the *ex post facto* analysis applies to Board rules and OAR 255–35–022(8) (former) is valid. As a result, this court must now determine whether the Board's use of the rule violated the *ex post facto* clause.

As noted above, the first prong of the *ex post facto* analysis is whether the law is retrospective, whether it applies to events occurring before its enactment and whether it changes a petitioner's effective sentence. *Weaver, supra*, 450 U.S. at 29, 32, 101 S.Ct. at 964, 966. In the case at bar, the earliest the amended OAR 255–35–022(8) could have been in effect is June 8, 1987, the first date the Board temporarily adopted the rule. Although the record is not clear, the latest time petitioner committed his crimes was sometime in January, 1987. Consequently, at the time petitioner committed his crimes, the amended rule was not in effect.

Furthermore, even though the determination of a sentence commitment date might not be technically considered part of the sentence, it does "alter the punitive conditions outside the sentence" and, as such, is retrospective. *See Weaver, supra,* 450 U.S. at 32, 101 S.Ct. at 966. Furthermore, the state has specifically stated that "through its rules governing release dates, the Board affects the amount of freedom or punishment that a prisoner in fact receives." *Williams, supra*, 98 Or.App. at 720, 780 P.2d at 795. The state has determined that the Board's rules affect a prisoner's punishment. As noted above, this court is bound by a state's interpretation of its own laws and its review is consequently limited to determining "whether the standards of punishment set up before and after the commission of an offense differ, and whether the later standard is more onerous than the earlier within the meaning of the constitutional prohibition." *Lindsey, supra,* 301 U.S. at 400, 57 S.Ct. at 798. Application of the amended rule in petitioner's case clearly satisfies the first prong of the standard.

The next prong of the analysis is whether the law is "more onerous than the prior law." *Dobbert, supra,* 432 U.S. at 294, 97 S.Ct. at 2299. This "inquiry looks to the challenged provision, and not to any special circumstances that may mitigate its effect on the particular individual." *Weaver, supra,* 450 U.S. at 33, 101 S.Ct. at 966. The *ex post facto* clause "looks to the standard of punishment prescribed by a statute, rather than to the sentence actually imposed." *Lindsey, supra,* 301 U.S. at 401, 57 S.Ct. at 799. *See also Miller, supra,* 482 U.S. at 432, 107 S.Ct. at 2452 (citing to *Lindsey* ).

Pursuant to OAR 255–35–022(8) (former), a defendant's new consecutive sentence begins at the time his parole was revoked. As the Oregon Court of Appeals noted in *Roof, supra,* the rule required that the range for the prior sentence be converted to the "time served prior to revocation," which " 'wipes out the underlying sentence obligation when a person on parole is convicted of new criminal activity and the ensuing sentence is consecutive.' " 85 Or. App. at 192, 736 P.2d at 195 (quoting the state's brief).

Pursuant to OAR 255–35–022(8) (amended), however, "[i]f the inmate has not yet been released on parole, the commencement date for the new crimes shall be the parole release date established at the previous prison term hearing." A prisoner must in effect finish serving his sentence for the parole violation before the prison term begins for the new crimes committed while the prisoner was on parole. *See* Respondent's Memorandum in Support of Motion to Deny Habeas Corpus Relief at 6–7.

The revised law substantially disadvantages petitioner and similarly situated defendants. Under the former rule, a prisoner's new sentences would begin immediate-

---

**1.** The court notes that the Oregon Court of Appeals found that former OAR 255–35–022(3) "was not contrary to statute and that it should be applied on remand." *Meriweather v. Board of Parole,* 97 Or.App. 212, 214, 775 P.2d 340, 341 (1989).

ly upon revocation of parole. Under the amended rule, however, the commencement of a prisoner's new sentences does not begin until the new parole release date established as a result of the parole violation. Consequently, under the amended rule, a prisoner spends a longer time in prison and is foreclosed from challenging the imposition of a sentence longer than his presumptive sentence under the former rule. *See, e.g., Weaver, supra,* 450 U.S. at 33, 34, 101 S.Ct. at 966, 967 (reduction in gain-time accumulation lengthens period a petitioner must spend in prison which disadvantages petitioner by creating "new restrictions on eligibility for release"). *See also Miller, supra,* 482 U.S. at 433, 107 S.Ct. at 2452 (new state sentencing guidelines substantially disadvantaged petitioner because they "foreclosed his ability to challenge the imposition of a sentence longer than his presumptive sentence under the old law").

Finally, even where the law operates to petitioner's detriment, the *ex post facto* prohibition does not apply where the law is only procedural. In the case at bar, the new rule alters the method employed in determining the sentence commitment date, but there is a consequent increase in punishment. The *ex post facto* analysis is applicable because the new rule increases a prisoner's punishment. *See Miller, supra,* 482 U.S. at 433, 107 S.Ct. at 2452.

*Conclusion*

OAR 255–35–022(8) (amended) is a retrospective rule that "makes more onerous the punishment for crimes committed before its enactment." *Weaver, supra,* 450 U.S. at 36, 101 S.Ct. at 968. Accordingly, the court finds that OAR 255–35–022(8) is void as applied to petitioner, whose crimes occurred before the rule's effective date.

Respondent's Motion to Deny Habeas Corpus Relief (# 21) is therefore DENIED. Petitioner's Motion for Habeas Corpus Relief is GRANTED. This case is remanded

2. Respondent alleges that OAR 255–25–005(1) affects this case and as such precludes the beginning of the Marion County terms until October, 1987 at the earliest. OAR 255–25–005(1) provides:
"(1) The commencement date for the prison term is the date on which the prisoner is deliv-

to the Oregon Board of Parole to recalculate petitioner's parole release date using OAR 255–35–022(8) (former) as interpreted by *Roof v. Board of Parole, supra.*[2]

ered to custody of the Department of Corrections for the purpose of serving the sentence." Respondent states petitioner was committed to the custody of the Department of Corrections on the Marion County convictions in October, 1987. OAR 255–25–005(1), however, is not at issue in this case.