**Lonnie Gene CHATMAN, Petitioner-Appellant,**

v.

**J. MARQUEZ, et al., Respondents-Appellees.**

No. 84–2032.

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 14, 1985.

Decided March 8, 1985.

Richard Keith Corbin, Sacramento, Cal., for petitioner-appellant.

W. Scott Thorpe, Sacramento, Cal., for respondents-appellees.

Before DUNIWAY, FARRIS and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

Appellant filed a petition for a writ of habeas corpus, alleging that the system for determining his parole date violates state law and several of his constitutional rights. The district court denied the petition. We affirm.

## I

## FACTS

In 1972, a California court convicted appellant Chatman of first degree murder, armed robbery, and kidnapping for the purpose of robbery. The Corrected Abstract of Judgment stated that Chatman "was not charged with [or] proved or admitted being armed with a deadly weapon at the time of his commission of the offense...." The record indicates, however, that appellant committed the murder with a firearm. *See, e.g., People v. Chatman,* 5 Crim. No. 1379, slip op. at 3–4 (Cal.App. Sept. 10, 1974) (unpublished opinion affirming appellant's convictions and recounting his confession to the shooting).

Under the indeterminate sentencing law ("ISL") then in effect, the court sentenced Chatman to life imprisonment without possibility of parole. Effective in 1977, the state legislature adopted a determinate sentencing law ("DSL") that entitled Chatman to parole consideration. Cal. Penal Code § 1170.2 (West Supp.1984).

In 1978, the California Community Release Board (subsequently renamed the Board of Prison Terms, hereafter the "Board") set a parole date for appellant of May 12, 1988. In computing the parole date, the Board invoked Cal.Admin.Code title 15, § 2285 to increase the base term by two years because "the prisoner personally used a firearm in the commission" of the crime.

In December 1982, the California Supreme Court ruled that the ex post facto clauses of the state and federal constitutions required prisoners convicted under the ISL to be considered for parole under both the ISL and DSL standards, and given the earlier of the two release dates. *In re Stanworth,* 33 Cal.3d 176, 188, 187 Cal. Rptr. 783, 791, 654 P.2d 1311, 1319 (1982) (en banc).

In May 1983, appellant filed a petition for a writ of habeas corpus in United States District Court for the Eastern District of California. Appellant initially challenged the two year firearm enhancement on various grounds, and subsequently questioned the calculation of his "gain time for good conduct" credits.

In June 1983, the Board held a *Stanworth* hearing to recompute appellant's parole date. The records of that hearing indicate that a parole date of February 11, 1988 was established. Subsequent records, however, show two previously calculated parole dates—July 12, 1987 and February 11, 1988. Although the reason for this discrepancy is not entirely clear from the record, it appears that the February 1988 date was calculated under the ISL, and the July 1987 date was calculated under the DSL. Pursuant to *Stanworth,* the earlier date should control. *Stanworth,* 33 Cal.3d at 188, 187 Ca.Rptr. at 791, 654 P.2d at 1319.

In January 1984, the district court denied the petition for writ of habeas corpus.

In March 1984, the Board held another hearing and further advanced appellant's parole date for positive post-conviction behavior. His current parole dates are July 12, 1986 and January 11, 1988, respectively. Again, the earlier date should control.

In June 1984, this court granted appellant's request for a certificate of probable cause to consider the issue of parole eligibility considerations under current and former California law in light of ex post facto principles.

## II

## STANDARD OF REVIEW

■ We apply de novo review to a district court's decision on a petition for a writ

of habeas corpus. *See Roth v. United States Parole Commission,* 724 F.2d 836, 839 (9th Cir.1984).

## III

### RIGHTS TO COUNSEL, JURY TRIAL AND DUE PROCESS

■ Appellant asserts that the two year firearm enhancement constituted punishment "for a crime for which he has neither been charged, tried, convicted nor sentenced." He states without elaboration that this violated his federal constitutional rights to counsel, trial by jury and due process, and his state constitutional rights to counsel and a fair trial. However, appellant cites only two cases in support of this argument, neither of which is on point. *See Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) (establishing right to jury trial in state criminal prosecutions for "serious" crimes); *Gideon v. Wainright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (establishing right to counsel for indigent defendants in certain state criminal prosecutions).

We reject this argument.

## IV

### VIOLATION OF CALIFORNIA LAW

■ Appellant contends that even if he had been convicted of using a firearm, California law prohibits using such a finding to enhance a sentence of life imprisonment. This argument is partly correct.

In *People v. Walker,* 18 Cal.3d 232, 133 Cal.Rptr. 520, 555 P.2d 306 (1976), the California Supreme Court held that a person sentenced to life imprisonment under the ISL could not have his sentence enhanced for using a deadly weapon during the commission of his crime. The stated rationale was that a life prisoner could not possibly serve an enhanced sentence, because under

the ISL a life sentence theoretically ended only at death. 18 Cal.3d at 243, 133 Cal. Rptr. at 526, 555 P.2d at 312. *Accord People v. Meredith,* 29 Cal.3d 682, 175 Cal. Rptr. 612, 631 P.2d 46 (1981). However, *Walker* and *Meredith* are inapplicable for two reasons.

First, the two cases only prohibit *sentence* enhancement by the court, not the use of firearm findings by the Board to calculate parole dates. The *Walker* court, for instance, noted that "[t]he Legislature may have attempted to increase the time to be served before eligibility for parole (§ 3046) in the case of a defendant subject to a life term who also used a firearm, but the [ISL] statute is not amenable to any such construction." 18 Cal.3d at 243, 133 Cal.Rptr. at 526, 555 P.2d at 312. *See also In re Neal,* 114 Cal.App.3d 141, 170 Cal. Rptr. 452 (1980).

Second, the California Supreme Court has only prohibited the enhancement of life sentences under the *ISL.* The Fifth District of the California Court of Appeals has continued, apparently without analysis, to apply this rule to *sentence* enhancements under the DSL. *See People v. Prysock,* 127 Cal.App.3d 972, 1003–1004, 180 Cal. Rptr. 15, 33 (1982); *People v. Rogers,* 124 Cal.App.3d 1071, 1082, 177 Cal.Rptr. 747, 752 (1981). The First District, however, has refused to apply the *Walker* rule to Board calculations of parole dates subsequent to the passage of the DSL. *In re Neal, supra.* In the only case involving firearm enhancements in post-DSL parole calculations, the *Neal* court reasoned that passage of the DSL eliminated the rationale of *Walker* by making it possible for a person sentenced to a determinate life sentence to actually serve the enhanced term. *In re Neal,* 114 Cal.App. at 144, 170 Cal. Rptr. at 454. The *Neal* court's reasoning about the effect of the DSL on the *Walker* rule was adopted by the district court in this case, and we also find it persuasive.[1]

---

1. Appellant attempts to discredit or distinguish

*Neal* on two grounds. First, he contends that

We hold that under California law, *Walker* and its progeny do not prohibit consideration of firearm use in setting parole dates subsequent to the passage of the DSL.

## V

## EX POST FACTO—FIREARM ENHANCEMENT

Appellant contends that the firearm enhancement violates ex post facto principles in general and the ex post facto rules set forth in *In re Stanworth, supra,* in particular.

The *Stanworth* court held that the Board must calculate the parole dates of ISL prisoners under both ISL and DSL regulations and give the prisoner the earlier release date. 33 Cal.3d at 188, 187 Cal.Rptr. at 791, 654 P.2d at 1319. Appellee contends that the Board complied with *Stanworth* by recalculating the parole dates at the June 1983 *Stanworth* hearing. The record shows that the Board did calculate two different and apparently alternative parole dates. The state concedes that the earlier date controls under *Stanworth.* The Board's actions should therefore not be disturbed unless the method of calculating the two alternative dates itself violates ex post facto principles.

The general principles relating to ex post facto questions were recently set forth in *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). In *Weaver,* the Supreme Court found that a statutory reduction in the amount of "gain time" a previously convicted prisoner could earn for good prison conduct violated the ex post facto clause. The Court explained that

> two critical elements must be present for a criminal or penal law to be *ex post facto* : it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.

450 U.S. at 29, 101 S.Ct. at 964 (citations and footnotes omitted). The Court has also stated that "[i]t is axiomatic that for a law to be *ex post facto* it must be more onerous than the prior law." *Dobbert v. Florida,* 432 U.S. 282, 294, 97 S.Ct. 2290, 2299, 53 L.Ed.2d 344 (1977); *accord Weaver,* 450 U.S. at 30, 101 S.Ct. at 965. These principles are as applicable to parole qualifications as to "gain time" credits. *Greenfield v. Scafati,* 277 F.Supp. 644, 646 (D.Mass. 1967) (three-judge court), *aff'd,* 390 U.S. 713, 88 S.Ct. 1409, 20 L.Ed.2d 250 (1968) (cited with approval in *Weaver*).

Whether the retrospective state statute ameliorates or worsens conditions imposed by its predecessor is a federal question. *Weaver,* 450 U.S. at 33, 101 S.Ct. at 966; *accord Lindsey v. Washington,* 301 U.S. 397, 400, 57 S.Ct. 797, 798, 81 L.Ed. 1182 (1937). The inquiry looks to the challenged provision, and not to any special circumstances that may mitigate its effect on the particular individual. *Weaver,* 450 U.S. at 33, 101 S.Ct. at 966; *see Dobbert,* 432 U.S. at 300, 97 S.Ct. at 2301. Moreover, the new and old statutes must be compared in toto to determine if the new law may be fairly characterized as more onerous than the old law. *Dobbert,* 432 U.S. at 294, 97 S.Ct. at 2298; *Weaver,* 450 U.S. at 38, 101 S.Ct. at 969 (Rehnquist, J., concurring).

In the case at bar, there is no question that a firearm enhancement that could not have been considered before the passage of the DSL is retrospective. However, considering the statutes in toto, the

---

*Neal* is incorrect because it fails to deal with the ex post facto problem. As explained later in this opinion, there is no ex post facto problem here. Second, appellant points to a footnote in which the *Neal* court stated that the defendant did not challenge the "proof of the fact of the firearm use." *Neal,* 114 Cal.App. at 145 n. 4, 170 Cal.Rptr. at 455 n. 4. The *Neal* court did not indicate that that was important to its decision. Furthermore, in this case even appellant does not appear to contend that he did not use a firearm, but only that he was not convicted of using one.

DSL is not more onerous than the ISL. Under the ISL, prisoners who were sentenced to life imprisonment without possibility of parole had no hope of ever leaving prison. Under the DSL, such prisoners may be granted parole. In fact, appellant is entitled to the *least* onerous of the three possible sentences provided by the ISL and DSL: life without possibility of parole, parole in 1988, and parole in 1986. The fact that one isolated factor that is less favorable to appellant may be considered under the generally more favorable statute is irrelevant, at least where the more favorable provisions of the new law fully compensate for it. *See Weaver*, 450 U.S. at 34–35, 101 S.Ct. at 967 (majority), 38, 101 S.Ct. 969 (Rehnquist, J., concurring).

We hold that since appellant is substantially benefitted by the new statute when considered as a whole, the statutory changes do not violate the ex post facto clause.

## VI

### EX POST FACTO—"GAIN TIME" CREDITS

 Appellant contends that the DSL provides less favorable "gain time for good conduct" credit provisions for some categories of prisoners than the ISL, in violation of the ex post facto clause.[2]

The ISL "gain time" provisions did not apply to appellant at all, since a sentence of "life without possibility of parole" by definition excludes the possibility of parole. The proper comparison in appellant's case is therefore between no possibility of parole under the ISL and the earning of gain time credits toward a possible parole under the DSL. The gain time credits as computed by the Board work to appellant's substantial advantage, and therefore do not violate the ex post facto clause under the *Weaver* test.

**2.** Appellee contends that the petition should be dismissed because appellant never challenged the calculation of gain time below. However,

## VII

### CONCLUSION

We affirm the trial court's denial of appellant's application for a writ of habeas corpus.

the record shows that appellant raised this issue both in his application for administrative appeal and in his pleadings before the district court.