George William NULPH,
Petitioner–Appellant,

v.

Vern FAATZ, Chairman, Oregon State
Board of Parole, Respondent–
Appellee.

No. 91–36304.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 1, 1993.

Decided June 23, 1994.

Steven Jacobson, Asst. Federal Public Defender, Portland, OR, for petitioner-appellant.

Harrison Latto, Asst. Atty. Gen., Salem, OR, for respondent-appellee.

Before: REINHARDT, BRUNETTI, and FERNANDEZ, Circuit Judges.

PER CURIAM:

George William Nulph, an Oregon state prisoner, appeals the district court's denial of his petition for habeas corpus under 28 U.S.C. § 2254. Nulph claims that the Oregon State Board of Parole violated the Ex Post Facto Clause when it set his release date in accordance with statutes and regulations adopted after the date of his offense. Because the Board retrospectively applied a statute which significantly increased Nulph's parole matrix range, we reverse.

## I.

On November 5, 1986, George William Nulph was convicted in state court of multiple felony counts (including one count of being an ex-convict in possession of a firearm), all related to a kidnapping and rape he committed on May 2 of that year. The trial court found Nulph to be a dangerous offender under Or.Rev.Stat. § 161.725, and sentenced him to seven 30–year terms and to a five-year term on the firearms charge. It also imposed a 15–year minimum term on each count other than the firearms conviction. The court ordered that five of the 30–year terms, as well as the five-year term, were to run consecutively. Thus, the court imposed a maximum sentence of 155 years, with a minimum term of 75 years.

At all times relevant to these proceedings, Oregon had a somewhat complex two-step

procedure for sentencing. First, the sentencing court would impose an indeterminate sentence up to the statutory maximum for the crime involved. The sentencing court could also impose a minimum term of up to one-half of the sentence it imposed. The offender's actual term of imprisonment was not determined until the second step of the process, however. Within some fixed period after the offender went to prison, the Parole Board was required to set a release date. It was this release date that determined the amount of time a prisoner would actually serve. *See* Or.Rev.Stat. § 144.245(1). In the case of "dangerous" offenders, however, Oregon required the Board to establish a release eligibility date rather than an actual release date.[1]

When the sentencing court did not impose a minimum term, the Board would determine the release date by applying a matrix system much like the U.S. Sentencing Guidelines.[2] The Board would calculate a "history/risk" and an "offense severity" score for the offender, and locate his sentencing range at the intersection of these scores on the matrix. If the Board found specified aggravating or mitigating factors, it could depart from the matrix range. *See* Or.Admin.R. § 255-35-035.[3] In determining the matrix range for offenders sentenced to consecutive terms, the Board at the time of Nulph's crimes employed the "principal-and-base-range" method. Under this method, the Board would first calculate the standard matrix range for the offender's most serious conviction (the "principal" crime), using both the history/risk and the offense severity axes. The Board would then add this principal range to the "base" ranges for each of the offender's other convictions. (The base range is calculated by using the most favorable history/risk score for the particular crime category). *See former* Or.Admin.Rule. §§ 255-35-005(11), -022(3).

Where, as here, the sentencing court imposed one or more minimum terms, the Board had two options. First, the Board could, in the exercise of its discretion, uphold the judicially-imposed minimum term.[4] In such a case, the release date or release eligibility date would be at the end of the minimum term. Even in cases in which the Board ultimately decided to uphold a judicially-imposed minimum, however, it was required to calculate and consider the offender's matrix range before doing so. Or.Admin.R. § 255-35-013. The Board's second option was to override the minimum under *former* Or.Admin.R. § 255-35-023, and establish a release date or release eligibility date based on the matrix range. When an offender was sentenced to *consecutive* judicially-imposed minimum terms, the Board's rule in effect at the time of Nulph's offense required the Board to treat the consecutive terms as a single, unified term and either override them all or uphold them all. *See Roof v. Board of Parole*, 85 Or.App. 188, 736 P.2d 193, 195 (1987).

On December 16, 1987, Nulph had his initial hearing before the Board. The Board voted to override three of Nulph's 15-year minimum terms but let the other two stand. Thus, it set a release eligibility date in the year 2017, after 30 years of imprisonment. The Board did so after first calculating a

---

1. For those, like Nulph, denominated "dangerous offenders," the Board calculated a "parole consideration hearing" date using the same procedures it used to calculate a release date for ordinary offenders. *See* Or.Rev.Stat. § 144.-228(1). A dangerous offender was eligible for release at his parole consideration hearing date only if the Board found that the condition that made him dangerous was "absent or in remission." *Id.*

2. The Board was also entitled to deny parole entirely under certain circumstances, upon the votes of four members of the five-member Board. *See* Or.Admin.R. § 255-35-030.

3. The Board's regulations also allowed it to depart from the ranges based on factors which were not specifically enumerated, but the Board was required to explain fully why unusual circumstances warranted departure based on a non-enumerated factor. *See Moore v. Oregon State Bd. of Parole*, 54 Or.App. 369, 635 P.2d 3, 6 (1981).

4. Under the rules in effect both at the time of Nulph's offense and at the time of his hearing, it only took two votes on the five-member Board to uphold a judicially-imposed minimum, and the Board was given only the vaguest criteria to guide its decision. *See former* Or.Admin.R. § 255-35-023.

matrix range of 310 to 414 months by adding together the standard matrix ranges for each of his crimes. Had the Board applied the principal-and-base-range method, it would have calculated a matrix range of 186 to 246 months. In ultimately deciding how many of Nulph's minimum terms to override, the Board made clear its intention to override just enough of them to place his release eligibility date right in the heart of his matrix range.[5]

In making these determinations, the Board applied two rules that were not in effect at the time of Nulph's offenses. The Board's decision to override some but not all of Nulph's minimums was pursuant to an administrative rule, Or.Admin.R. § 255–35–023(3), added in 1987, which allowed the Board to "override one or more of the judicially imposed minimums."[6] Similarly, the Board's calculation of Nulph's matrix range by adding together the standard ranges for all of his crimes, instead of using the principal-and-base-range method, was pursuant to a statute passed by the Oregon Legislature in the same year. See Or.Laws 1987, ch. 634, §§ 2, 4(2). This statute required the Board to cease using the principal-and-base-range method in cases involving certain enumerated crimes (which included several of the offenses Nulph committed). The new statute, by its terms, applied to all prisoners who committed their crimes "before or after" its effective date. See id., § 7(3).

After unsuccessful state appeals, Nulph filed the instant federal habeas petition, which alleged that the Board violated the Ex Post Facto and Due Process Clauses when it applied the two rules that had not been in effect at the time of his offense.[7] The district court denied the petition on the merits, and this appeal followed. We now reverse. We hold that retrospective application of the new method for calculating the matrix range violated the Ex Post Facto Clause. Thus, Nulph's release eligibility date must be vacated and a new date for parole consideration established by the Board. In addition, we conclude that retrospective application of the new rule allowing the Board to override only some of the minimum terms does not on its face violate the Ex Post Facto Clause. In light of our decision that Nulph's release eligibility date must be vacated, however, we need not decide whether the Board's application of that rule in Nulph's case violated ex post facto principles.

## II.

We agree with Nulph that the Board violated the prohibition on ex post facto laws when it calculated his parole matrix range in accordance with the statute adopted after his offense. This statute, which eliminated the more favorable method for determining the matrix range of offenders sentenced to consecutive terms, worked to the substantial disadvantage of defendants in Nulph's position. Moreover, it seems clear that the Board relied heavily on Nulph's matrix range, calculated under the newer rules, when it decided his release eligibility date.[8] Because we conclude that the retrospective application of the new matrix calculation rules violated the Ex Post Facto Clause, we reverse the district court's denial of habeas corpus relief.

---

5. Explaining the Board's decision, Board member Dinsmore stated that:

   We feel that the sentences or the minimums that were imposed by the courts is [sic] excessive and that setting you within your guideline range of 360 months, is an appropriate sanction at this point for your criminal conduct.

   The 360–month sentence the Board upheld was just under the midway point in the matrix range the Board calculated for Nulph using the newer rules (310 to 414 months).

6. Or.Admin.R. § 255–35–023(3) replaced the prior rule which had required the Board to override all of an offender's minimum sentences or none at all.

7. Nulph's due process argument is entirely dependent on his ex post facto argument. Accordingly, we consider only his ex post facto claims in this opinion.

8. The Board added together the principal ranges for all of Nulph's convictions and calculated a matrix range of 310–414 months and decided to overturn three of Nulph's 15–year judicially-imposed minimum sentences and leave two intact for a total sentence of 360 months. If the Board had set Nulph's sentence in accordance with the principal-and-base-range method, Nulph's matrix range would have been 186–244 months.

A penal law which is applied retrospectively to the disadvantage of an offender is an unconstitutional ex post facto law. U.S. Const., art. I, § 9, cl. 3; art. I, § 10, cl. 1; *see Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987); *Watson v. Estelle,* 886 F.2d 1093, 1094 (9th Cir.1989). Although the Supreme Court has held only that defendants must show retrospectivity and detriment to make out an ex post facto claim, we have added a third requirement—that the challenged state action be a "law." *See Wallace v. Christensen,* 802 F.2d 1539, 1553–54 (9th Cir.1986). However, as used in our ex post facto jurisprudence, "laws" is a far broader term than "statutes." The Sentencing Guidelines, for example, are generally considered "laws" for purposes of the Ex Post Facto Clause. *See United States v. Sweeten,* 933 F.2d 765, 772 (9th Cir.1991) (per curiam). Moreover, the Ex Post Facto Clause applies to all retrospective laws which increase an offender's actual punishment, regardless of whether the laws affect part of the offender's sentence "in some technical sense." *Weaver v. Graham,* 450 U.S. 24, 33, 101 S.Ct. 960, 966, 67 L.Ed.2d 17 (1981). We have specifically held that the Ex Post Facto Clause applies to retrospective changes in parole qualifications. *See Chatman v. Marquez,* 754 F.2d 1531, 1535 (9th Cir.), *cert. denied,* 474 U.S. 841, 106 S.Ct. 124, 88 L.Ed.2d 101 (1985).

It is clear that the Oregon parole matrix guidelines, and the 1987 statute which changed the method of calculating the range for serious offenders sentenced to consecutive terms, are "laws." The Oregon courts have consistently taken the position that the rules adopted by the Oregon State Board of Parole are laws for ex post facto purposes, *see, e.g., Williams v. Board of Parole,* 98 Or.App. 716, 780 P.2d 793, 794–95 (1989), *review denied,* 309 Or. 522, 789 P.2d 1387 (1990), and the U.S. District Court for the District of Oregon has reached the same conclusion. *See Meyrovich v. Maass,* 762 F.Supp. 1417, 1420 (D.Or.1991). In *Flemming v. Board of Parole,* 998 F.2d 721, 726

(9th Cir.1993), we adopted the conclusion of the Oregon courts and the district court in *Meyrovich* and held that the Oregon Parole Board's rules are "laws" for the purposes of the Ex Post Facto Clause. Our holding in *Flemming* is dispositive here.

It is also clear that the new rules for determining the matrix ranges of offenders sentenced to consecutive terms were applied retrospectively. "A law is retrospective if it 'changes the legal consequences of acts completed before its effective date.'" *Miller,* 482 U.S. at 430, 107 S.Ct. at 2451 (quoting *Weaver,* 450 U.S. at 31, 101 S.Ct. at 965). A law affecting a prisoner's sentence is retrospective if it "applies to prisoners convicted for acts committed before the provision's effective date." *Weaver,* 450 U.S. at 31, 101 S.Ct. at 965. The events underlying Nulph's conviction occurred on May 2, 1986. At the time these events occurred, the Board's rules provided for the more lenient principal-and-base-range method. *See former* Or.Admin.R. § 255–35–022(3).[9] In 1987, after Nulph committed his crimes, the Oregon Legislature passed the statute which the Board applied at Nulph's hearing. This statute required the Board to calculate the normal matrix range for each crime, using both the offense severity and the history/risk scales, and add the terms. *See* Or.Laws 1987, ch. 634, §§ 2, 4(2). This law changed the consequences of Nulph's prior conduct, and was thus retrospective.

Finally, there is little doubt that the new rules for determining the matrix range of offenders sentenced to consecutive terms are detrimental. "It is axiomatic that for a law to be *ex post facto* it must be more onerous than the prior law." *Dobbert v. Florida,* 432 U.S. 282, 294, 97 S.Ct. 2290, 2299, 53 L.Ed.2d 344 (1977). We must "compare the two statutory procedures *in toto* to determine if the new may be fairly characterized as more onerous." *Id.* If after such a comparison we conclude that the new scheme, taken as a whole, is disadvantageous

---

9. Although an opinion of the Oregon Attorney General issued after Nulph's crimes concluded that the Board's rule was inconsistent with the enabling statute, the Oregon courts upheld the rule as a proper exercise of the Board's power. *See Meriweather v. Board of Parole,* 97 Or.App. 212, 775 P.2d 340, 341 (1989).

to defendants, the detriment requirement is satisfied even if the defendant before us "'cannot show definitively that he would have gotten a lesser sentence.'" *Miller*, 482 U.S. at 432, 107 S.Ct. at 2452 (citation omitted). *See also Chatman*, 754 F.2d at 1535 ("The inquiry looks to the challenged provision, and not to any special circumstances that may mitigate its effect on the particular individual."). Moreover, even if the new law is not disadvantageous to defendants in general, an individual will satisfy the detriment requirement if he shows that it can "be said with assurance" that he would have received less severe punishment under the prior scheme. *Dobbert*, 432 U.S. at 294, 97 S.Ct. at 2299.

■ Comparing the two statutory schemes in toto, it is clear that the new scheme is disadvantageous to defendants. Prior to the 1987 statute, an offender's history/risk score would count against him on only one of his convictions. Under the new statutory procedure, the Board counts the offender's history/risk score against him on *all* of his convictions, thus increasing the matrix range substantially. The change *always* operates to the detriment of defendants sentenced to consecutive terms, except where the defendant has the lowest possible history/risk score; in that case the change has no effect. Under no circumstances, however, does the new system ever inure to any defendant's benefit.

The new statute has a detrimental effect on those multiple offenders, like Nulph, who receive judicially imposed minimum sentences, even though in their cases the Board is not required to impose a release eligibility date based on the matrix range. As we made clear earlier, the Board must, in those cases as in all others, calculate and consider that range before determining either an actual or a potential release date. The Oregon Legislature would not have imposed such a requirement if it had not expected that the exercise would have some effect on the

Board's decision in those cases, as well as in all others. Indeed, the matrix range appears to serve as a sort of benchmark which guides the Board's exercise of its discretion with respect to sentencing decisions regarding all defendants who are the subject of judicially imposed minimum terms. The new rule has increased this benchmark punishment for the large majority of those defendants and may have a significant practical impact even in those cases in which the Board decides to uphold some or all of the judicially imposed minimum terms.[10] Thus, we conclude that the 1987 statute operates in an ex post facto manner with respect to the group of defendants sentenced to both consecutive sentences and minimum terms.

■ We conclude that the Board violated the Ex Post Facto Clause when it retroactively applied the 1987 statute in connection with its calculation of matrix ranges. We specifically hold that the application of that part of the statute in cases involving judicially-imposed minimum sentences is unconstitutional. Accordingly, we reverse the district court's denial of habeas corpus relief and remand so that it may issue a writ directing the state board of parole to recalculate Nulph's release eligibility date using the matrix range calculation procedure in effect at the time of his offense.

### III.

■ We disagree, however, with Nulph's claim that another new rule, the rule that allowed the Board to override three of his 15–year judicially-imposed minimum terms while letting two of them stand, constitutes a facial violation of the Ex Post Facto Clause. The new administrative rule was promulgated after Nulph's offense and empowered the Board to override "one or more" of the judicially-imposed minimum sentences. Or.Admin.R. § 255–35–023(3). At the time of Nulph's offense, the applicable rule, former Or.Admin.R. § 255–35–022(2), allowed the

---

**10.** The requirement that the Board calculate and consider the defendant's matrix range appears to have served that sort of a benchmark function in Nulph's case. As noted above, it is clear that, after consulting the matrix, the Board decided to establish a release eligibility date that would fall near the midpoint of Nulph's range. It did so by leaving two minimum sentences intact. The Board's use of a "one or more" rule in setting aside minimum sentences, *see infra* Part III, makes it even clearer that the effect of increasing the matrix range is adverse in cases like Nulph's.

Board only two options: override all of the consecutive minimum terms and impose a new sentence according to the matrix, or uphold all of those terms. Although the new rule is a "law" and although it was applied retrospectively, we hold that it does not on its face disadvantage defendants in general. It is therefore not facially violative of the Ex Post Facto Clause.

After comparing the all-or-nothing scheme in effect at the time of Nulph's offense with the rule applied at the hearing, we are unable to conclude that the new rule is generally disadvantageous to prisoners. It is certainly possible that, in some cases where the Board decides to override some but not all of a prisoner's judicially-imposed minimum terms, it would have overridden all of the terms under an all-or-nothing rule. However, it seems equally possible that under such a rule the Board would have *upheld* all of the minimum terms. The Oregon courts, crediting the latter scenario, have held that the change from the all-or-nothing rule was ameliorative and thus not an ex post facto law. *See Williams,* 780 P.2d at 795. Of course, we are not bound by the Oregon courts' decision. *See Chatman,* 754 F.2d at 1535 ("Whether the retrospective state statute ameliorates or worsens conditions imposed by its predecessor is a federal question."). Nevertheless, we reach the same result. We have reviewed the legislative history to which the parties have referred us and find it inconclusive. Further, neither party relies on any practice or experience under the new rule to support its position. All in all, we have no reason to conclude that the newer rule is facially any more onerous than the all-or-nothing scheme. Thus, we cannot conclude that the new rule is disadvantageous to defendants in general. *See Dobbert,* 432 U.S. at 294, 97 S.Ct. at 2298.

▆▆▆ In light of our decision that the Board must establish a new release eligibility date for Nulph because of its reliance on the new statutory procedure for establishing his matrix range, we need not decide whether the new "one or more" rule was detrimental to him as applied. We note, however, that in order to demonstrate that it was, Nulph would be required to show that he would have received a shorter prison term under the old rule (in other words, that the Board would have struck all five judicially-imposed minimums under the all-or-nothing rule). Following issuance of the Writ, the Board will be required to recompute Nulph's release eligibility date by applying the matrix-calculation rules in effect at the time of his offense. If the Board again strikes only some of the minimum terms, and Nulph again contests that action, a determination of whether the failure to apply the all-or-nothing rule caused specific detriment to Nulph will be based on the record that is developed during the new Parole Board proceedings.

### IV.

The judgment of the district court is reversed. The case is remanded for issuance of the Writ.