Robert JOHNSON, Petitioner,

v.

Alfonso GOMEZ, Respondent.

No. CIV–S–92–2067 DFL GGH.

United States District Court,
E.D. California.

Jan. 11, 1995.

Dennis P. Riordan, Riordan & Rosenthal, San Francisco, CA, for Robert Johnson.

Linda Mireya Gonzalez, James Ching, Office of Atty. Gen., Sacramento, CA, for Alfonso Gomez.

### MEMORANDUM OF OPINION AND ORDER

LEVI, District Judge.

A 1988 amendment to article V, section 8 of the California Constitution gives the Governor the power to reverse the Board of Prison Terms' decision to allow or deny parole to persons "sentenced to an indeterminate term upon conviction of murder." Cal. Const. art. V, § 8(b). The Governor exercised this authority to deny parole to petitioner Robert Johnson after the Board of Prison Terms had approved him for parole. Arguing that the 1988 amendment as applied to him is an unconstitutional ex post facto law, petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2254.

### I

In 1977, petitioner was convicted of first degree murder and sentenced to an indeterminate sentence of twenty-five years to life.

At the time of petitioner's conviction, the Board of Prison Terms ("BPT") had sole responsibility for deciding whether incarcerated defendants were suitable for parole. In 1983, at petitioner's first parole hearing, the BPT found petitioner unsuitable for parole.

In 1988, the California voters approved Proposition 89, which added section 8(b) to article V of the California Constitution. In combination with its implementing legislation, section 8(b) gives the Governor a 30–day period to "affirm, modify, or reverse" any decision of the BPT "with respect to the granting, denial, revocation, or suspension of parole of a person sentenced to an indeterminate term upon conviction of murder." The Proposition works no change in the standards used to evaluate eligibility for parole by providing that the Governor is to exercise the review authority using "the same factors which the parole authority is required to consider."[1]

After several intervening parole denials, on August 19, 1991, by a two-to-one vote, a BPT panel determined that petitioner was suitable for parole, and set his term at 153 months, less than the time already served. On September 16, 1991, the BPT Decision Review Committee affirmed the decision, and petitioner's release was set for October 19, 1991.

The Governor reversed the BPT decision. The Governor's Statement of Reasons explains that in reversing the decision, the Governor considered: the nature of the offense, which involved a plan to choose a young couple, murder the male, and kidnap and rape the female and which ended in the petitioner's execution-style killing of the male victim; the motivation for the crime, involving random selection of victims and an attempt to kidnap for rape; petitioner's unstable social history; and petitioner's minimization of his role in the crime. (Governor's Statement of Reasons, Ex. I in Support of Petition for Writ of Habeas Corpus.)

## II

Petitioner filed his request for a writ of habeas corpus in this court on December 14, 1992. In the petition, Johnson does not challenge the substance of the Governor's findings or his reliance on the factors he considered in reversing the BPT; rather, he claims that section 8(b) of Article V, as applied to him, is an unconstitutional ex post facto law.[2]

On July 27, 1994, the magistrate judge issued findings and recommendations in which he recommended that the writ be granted. The magistrate judge concluded that section 8(b) is an unconstitutional ex post facto law on the basis of his finding that the law is a "new, substantive hurdle," reducing, and enacted for the very purpose of reducing, the ability of prisoners to secure parole.

Respondent has timely filed objections to the findings and recommendations. For the reasons stated below, the court finds that section 8(b) is not unconstitutional ex post

---

1. Section 8(b) provides in full:

    No decision of the parole authority of this State with respect to the granting, denial, revocation, or suspension of parole of a person sentenced to an indeterminate term upon conviction of murder shall become effective for a period of 30 days, during which the Governor may review the decision subject to procedures provided by statute. The Governor may only affirm, modify, or reverse the decision of the parole authority on the basis of the same factors which the parole authority is required to consider. The Governor shall report to the Legislature each parole decision affirmed, modified, or reversed, stating the pertinent facts and reasons for the action.

    Cal. Const. art. V, § 8(b). The implementing legislation is at Penal Code § 3041.2, which provides:

    (a) During the 30 days following the granting, denial, revocation, or suspension by a pa-

    role authority of the parole of a person sentenced to an indeterminate prison term based upon a conviction of murder, the Governor, when reviewing the authority's decision pursuant to subdivision (b) of Section 8 of Article V of the Constitution, shall review materials provided by the parole authority.

    (b) If the Governor decides to reverse or modify a parole decision of a parole authority pursuant to subdivision (b) of Section 8 of Article V of the Constitution, he or she shall send a written statement to the inmate specifying the reasons for his or her decision.

    Cal.Penal Code § 3041.2 (West Supp.1994).

2. Johnson also contends that the implementing legislation's failure to provide him with a hearing before the Governor violated his right to due process. This contention has not been addressed at this point in the litigation.

facto law and denies petitioner's application for a writ of habeas corpus on this basis.

## III

Article I Section 10 of the United States Constitution provides that "No State shall ... pass any ex post facto Law." The Supreme Court has settled on a description of the scope of the clause as follows:

> It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto.*

*Collins v. Youngblood,* 497 U.S. 37, 42, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990) (quoting *Beazell v. Ohio,* 269 U.S. 167, 168–71, 46 S.Ct. 68, 68–69, 70 L.Ed. 216 (1925) and citing quotation of same language in *Dobbert v. Florida,* 432 U.S. 282, 292–94, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977)). This description of the scope of the clause is a modest restatement of that originally given by Justice Chase in *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798). Here petitioner argues that the relevant *Calder* factor is the prohibition on greater punishment; petitioner argues that as a result of the change in law and the Governor's decision to reverse the BPT, his punishment has been increased.

■ Petitioner is certainly correct that a change in the parole system may be found to violate the ex post facto prohibition on increased punishment. This is not a self-evident proposition; one may question that the clause was intended to give such detailed guidance or assurance to a person contemplating a crime or that the parole system stands on a footing sufficiently analogous to the maximum punishment provided by statute to support application of the clause to the parole system. *See Weaver v. Graham,* 450 U.S. 24, 35–39, 101 S.Ct. 960, 968–69, 67 L.Ed.2d 17 (1981) (Blackmun, J., concurring) (expressing view that "good time" credits are not part of sentence imposed). Nonetheless,

it is now well established that various changes to parole eligibility may constitute greater punishment in violation of the ex post facto clause. *See id.* 450 U.S. at 35–37, 101 S.Ct. at 968 (majority opinion); *Morales v. California Dep't of Corrections,* 16 F.3d 1001 (9th Cir.), *cert. granted,* —— U.S. ——, 115 S.Ct. 40, 129 L.Ed.2d 935 (1994); *Nulph v. Faatz,* 27 F.3d 451, 455–56 (9th Cir.1994).

Moreover, petitioner demonstrates what the Supreme Court describes as the two "critical elements" of the ex post facto prohibition—retrospectivity and detriment. *See Miller v. Florida,* 482 U.S. 423, 429–31, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987). Section 8(b) is retrospective because it is applied to petitioner although he committed the offense of conviction prior to the enactment of the section. Section 8(b) works to petitioner's detriment because he was approved for parole by the BPT and in the absence of the Governor's review would have been released.

Petitioner's argument falters, however, as to what may be described as the third critical element—that the change in law affect the substance of one of the *Calder* categories as opposed to working a change in procedure. Thus, in *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), the Supreme Court held that a change in the law that took from the jury and gave to the judge the final decision as to whether to impose the death penalty was procedural and for that reason not ex post facto:

> Even though it may work to the disadvantage of a defendant, a procedural change is not *ex post facto.* ... In the case at hand, the change in the statute was clearly procedural. The new statute simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime.

432 U.S. at 294, 97 S.Ct. at 2298. Following *Dobbert,* the Ninth Circuit has reiterated that a "purely procedural change in the law, even if applied retroactively, does not violate the ex post facto clause." *See Morales,* 16 F.3d at 1004 (citation omitted).

■ *Dobbert* is controlling here.[3] Section 8(b) has indeed worked to the disadvantage of Johnson. Except for the Governor's action, petitioner would now be on parole. But as *Dobbert* makes clear, a procedural change that affects a defendant is not covered by the ex post facto clause. As a large body of precedent establishes, "[a] procedural change is one that alters the method used to make a determination." *Morales*, 16 F.3d at 1004.[4] And all that section 8(b) does is to change the method used to make a decision by giving the Governor authority to overrule the BPT. It leaves the applicable standards untouched and instructs the Governor to consider the very same factors considered by the Board under existing law.[5]

■ In short, because the only difference between the present scheme and the old scheme is who makes the final decision, this change in the law is procedural and not subject to the ex post facto clause. *Accord In re Arafiles*, 6 Cal.App.4th 1467, 8 Cal. Rptr.2d 492 (1992) (upholding section 8(b) from attack based on ex post facto clause). A holding to the contrary would unduly restrict the State from amending its organization and decisionmaking structure.[6] Petitioner does not have a constitutional right under the ex post facto clause to a decision by the governmental entity of his choice. Section 8(b) does not change the "definition of crimes, defenses, or punishments." *Collins*, 497 U.S. at 51, 110 S.Ct. at 2724. It is not an ex post facto law.

## IV

For the reasons stated above, the court declines to adopt the Findings and Recom-

---

3. Petitioner's effort to distinguish *Dobbert* on the basis that the defendant in *Dobbert* was unable to show certain detriment is unavailing. There are two bases to the Court's decision—a finding that the changes in the law were ameliorative on the whole and a separate finding that the changes were procedural. The Court expressly states that "[t]hese are independent bases for our decision." *Dobbert*, 432 U.S. at 292 n. 6, 97 S.Ct. at 2298 n. 6. Thus, even if Dobbert could have shown detriment to a certainty, his invocation of the ex post facto clause would still have failed. Finally, *Dobbert* concerned one of the *Calder* factors—punishment—in much the same way as that factor may be said to be implicated here. It cannot be distinguished as involving matters not included in the *Calder* formulation, which is how petitioner tries to distinguish all of the other ex post facto cases in which changes to the administration of the law have been deemed procedural. *See* note 4, *infra*.

4. Thus, it is not a violation of the ex post facto clause to: (1) change the law to allow an appellate court to reform an improper verdict rather than remanding for a new trial; *Collins v. Youngblood*, 497 U.S. 37, 51–53, 110 S.Ct. 2715, 2724, 111 L.Ed.2d 30 (1990); (2) change the law to allow the judge, rather than the jury, to determine whether to impose the death penalty; *Dobbert*, 432 U.S. at 292–96, 97 S.Ct. at 2298–99; (3) change the law to allow the prosecution to appeal the reversal of a conviction by an intermediate appellate court to a state supreme court; *Mallett v. North Carolina*, 181 U.S. 589, 595–98, 21 S.Ct. 730, 733, 45 L.Ed. 1015 (1901); or (4) change the number of jurors from twelve to eight, making it easier to get a unanimous verdict; *Collins v. Youngblood*, 497 U.S. at 51–53, 110 S.Ct. at 2724, expressly overruling *Thompson v. Utah*, 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed.

1061 (1898), to the extent that it relied on the ex post facto clause.

5. The decision in *Nulph v. Faatz*, 27 F.3d 451 (9th Cir.1994), is not to the contrary. In *Nulph* the Ninth Circuit found that changes to the standards by which parole was calculated violated the ex post facto clause. This was a change in the substance of the law, not a change in who made the decision. Similarly, in *Morales v. California Department of Correction*, 16 F.3d 1001 (9th Cir.), *cert. granted*, —— U.S. ——, 115 S.Ct. 40, 129 L.Ed.2d 935 (1994), the court found that changes in the frequency of parole hearings are not procedural because they "do not simply change the procedures used to determine whether prisoners are entitled to parole or the methods used to insure compliance with the terms of parole; they eliminate the possibility of parole altogether in the period between hearings." *Id.* at 1004 (citations omitted). By contrast, section 8(b) "does not eliminate petitioner's right to parole. Nor does it lengthen the period which petitioner must remain in prison before becoming eligible for parole. Section 8(b) simply allows the Governor the discretionary authority to review parole decisions for life termers convicted of murder." *In re Arafiles*, 6 Cal.App.4th 1467, 8 Cal.Rptr.2d 492, 503 (1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1321, 122 L.Ed.2d 707 (1993).

6. Counsel for petitioner conceded at oral argument both that the voters' purpose in enacting section 8(b) and the Governor's historical use of the Section to overrule grants of parole, as opposed to denials of parole, were not relevant considerations under ex post facto clause doctrine. Section 8(b) is neutral on its face and gives the Governor the authority to grant as well as deny parole.

mendations. The writ of habeas corpus shall not issue based on petitioner's ex post facto claim. The matter is remanded to the magistrate judge for further proceedings concerning petitioner's alternative argument that he has been denied procedural due process.

IT IS SO ORDERED.