Robert JOHNSON, Petitioner–Appellant,

v.

Al GOMEZ; Attorney General of the State of California, Respondents–Appellees.

No. 95–15543.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 13, 1996.

Decided Aug. 14, 1996.

Dennis P. Riordan, Dylan L. Schaffer, Riordan & Rosenthal, San Francisco, California, for petitioner-appellant.

Joan W. Cavanagh, James Ching, Deputy Attorneys General, Sacramento, California, for respondents-appellees.

Before: SCHROEDER, D.W. NELSON, and KOZINSKI, Circuit Judges.

SCHROEDER, Circuit Judge:

Robert Johnson is a California state prisoner who appeals the district court's denial of his 28 U.S.C. § 2254 petition claiming that application of a 1988 change in the California Constitution violated the Ex Post Facto Clauses of the United States and California constitutions. The change authorized discretionary gubernatorial review of the Board of Prison Term's ("BPT") parole decisions regarding prisoners convicted of murder and sentenced to an indeterminate term. Johnson, who was in this class, was approved for parole and scheduled to be released the day after the 30–day period for gubernatorial review expired. On the 30th day, the governor, acting under the new law, revoked Johnson's grant of parole.

The district court denied Johnson relief because it viewed the new law as effecting a procedural rather than a substantive change and held that such a procedural change could be given retroactive application. In this appeal we must consider the issue in light of the Supreme Court's recent decision in *California Dep't of Corrections v. Morales*, — U.S. ——, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995), that ex post facto principles do not bar retroactive application of procedural changes when the effect of the change upon a petitioner's actual punishment is only speculative and could not be known with any certainty. We conclude that the district court correctly recognized that ex post facto principles do not bar application of the new law to those convicted and sentenced before its effective date.

### BACKGROUND

In 1977, Johnson was convicted of first degree murder and sentenced to an indeterminate sentence of twenty-five years to life. At the time of Johnson's crime, California law provided that the BPT, acting through a panel and review committee, had sole responsibility for deciding whether incarcerated defendants were suitable for parole. In 1988, California voters approved Proposition 89, which added Section 8(b) to Article V of the California Constitution to provide for review by the governor. The implementing legislation provided:

(a) During the 30 days following the granting, denial, revocation, or suspension by a parole authority of the parole of a person sentenced to an indeterminate prison term based upon a conviction of murder, the Governor, when reviewing the authority's decision pursuant to subdivision (b) of Section 8 of Article V of the Constitution, shall review materials provided by the parole authority.

(b) If the Governor decides to reverse or modify a parole decision of a parole authority pursuant to subdivision (b) of Section 8 of Article V of the Constitution, he or she shall send a written statement to the inmate specifying the reasons for his or her decision.

Cal.Penal Code § 3041.2 (1994).

Following several parole denials, a BPT panel on August 19, 1991 found Johnson suitable for parole. The BPT Decision Review Committee affirmed the decision, but under the new law Johnson was not eligible for immediate release. His release was conditioned upon the expiration of the thirty-day gubernatorial review period. Governor Wilson exercised his review power on October 18, 1991 and reversed the BPT decision.

Johnson petitioned for a writ of habeas corpus in state court, contending among other things, that section 8(b) violated his procedural due process rights and violated the Ex Post Facto Clause of the California and United States Constitutions. The California Court of Appeal denied Johnson's petition on May 29, 1992. *See In re Arafiles*, 6 Cal. App.4th 1467, 8 Cal.Rptr.2d 492, 504 (1992), *cert. denied*, 507 U.S. 934, 113 S.Ct. 1321, 122 L.Ed.2d 707 (1993). The California Supreme Court denied Johnson's petition on the merits on September 30, 1992. Thereafter, Johnson filed a habeas petition in district court, again raising his due process and ex post facto claims. The magistrate judge found that the application of section 8(b)

violated the Ex Post Facto Clause and recommended that the writ be granted. The district court disagreed, finding no ex post facto violation and denied the writ. *See Johnson v. Gomez*, 876 F.Supp. 226 (E.D.Cal. 1995).[1] Johnson timely appeals.

## ANALYSIS

The magistrate and district judges took very different approaches to Johnson's case, and each found some support in Supreme Court jurisprudence prior to *Morales*. The magistrate judge looked to the substantive effect that the governor's review had on Mr. Johnson's case and to the intent of the voters in approving Proposition 89. The voters' intent, as indicated in contemporaneous accounts, was at least in part to give the governor authority to prevent convicted murderers from receiving parole. The district court, on the other hand, looked to the neutral structure of the law, and held that it was a procedural change that could be applied retroactively because it did not mandate a general increase in punishment. We review briefly the Supreme Court decisions that led to the differing analyses and conclusions.

The seminal case in Ex Post Facto Clause interpretation is *Calder v. Bull*, 3 Dall. 386, 1 L.Ed. 648 (1798), which rejected a claim that a law that provided for a new level of hearings in probate cases could not be applied retroactively. The Supreme Court limited the application of the Ex Post Facto Clause to criminal legislation that effected an increase in punishment, criminalized conduct that was not criminal previously, or required lesser proof for conviction of an offense than was required earlier. The Court said that the only legislative acts forbidden were:

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.

> 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

*Calder v. Bull*, 3 Dall. at 390–92, 1 L.Ed. 648.

In *Thompson v. Utah*, 170 U.S. 343, 352–53, 18 S.Ct. 620, 623–24, 42 L.Ed. 1061 (1898) the Court appeared to broaden the reach of the Ex Post Facto Clause by striking down retroactive application of a Utah law subjecting a defendant to a trial by an eight-person rather than a twelve-person jury. In *Mallett v. North Carolina*, 181 U.S. 589, 597, 21 S.Ct. 730, 733, 45 L.Ed. 1015 (1901), however, the Court ruled that a new law granting the prosecution the right to appeal from an intermediate appellate court ruling in a defendant's favor did not violate ex post facto principles, even though under the previous law such a ruling would have been final. In *Beazell v. Ohio*, 269 U.S. 167, 170, 46 S.Ct. 68, 68–69, 70 L.Ed. 216 (1925), the Court retreated somewhat from any implication in *Thompson* that changes in procedure were generally subject to ex post facto scrutiny. The Court ruled that a new law requiring persons jointly indicted for a felony to be tried jointly, rather than separately, could have retroactive application. It said that the law change "affects only the manner in which the trial of those jointly accused shall be conducted." *Id.* at 170, 46 S.Ct. at 69. The Court reiterated the categories as set out in *Calder* but, relying upon *Thompson*, acknowledged that some changes in procedure may violate the Ex Post Facto Clause.

In *Dobbert v. Florida*, 432 U.S. 282, 294, 97 S.Ct. 2290, 2298–99, 53 L.Ed.2d 344 (1977) the Supreme Court drew back still further from the *Thompson* rule, holding that a change in law that decreased the jury's power to impose a life sentence did not violate ex post facto principles when applied retroactively. The Court found no violation because the law was only a procedural change and because it appeared the change would benefit defendants in most cases by providing that the trial judge and the state's highest court

---

1. The district court also denied Johnson's procedural due process claim. Johnson does not seek further review of this issue.

would have the final say on whether the death penalty was imposed. The Court so held even though the jury in Dobbert's case had recommended a life sentence and was overruled by the trial judge and state supreme court. The Court, noting that the jury may have chosen leniency because the final decision rested with the trial judge, held that Dobbert could only speculate whether the jury would have recommended a life sentence had its decision been final. *Id.* at 294 & n. 7, 97 S.Ct. at 2299 & n. 7.

In *Collins v. Youngblood*, 497 U.S. 37, 51–52, 110 S.Ct. 2715, 2723–24, 111 L.Ed.2d 30 (1990), the last major Supreme Court pronouncement prior to the district court's decision in this case, the Court expressly overruled *Thompson* and held that a new law which gave an appellate court the authority to reform an improper verdict, where previously a defendant was entitled to a new trial, had not resulted in a change like those enumerated in *Calder* and therefore did not implicate the Ex Post Facto Clause.

The district court in this case relied upon *Dobbert*, *Mallett* and *Collins* in holding that Johnson could not obtain relief under the Ex Post Facto Clause because the change in the law of which he complained was merely a procedural change. *Johnson*, 876 F.Supp. at 229 & n. 4. The district court rejected the magistrate judge's view that the new law violated the Ex Post Facto Clause because it had the practical effect of denying parole in a case where parole had been approved and would have resulted in Johnson's release under the old law. The district court reasoned that the new law did not make any of the substantive changes proscribed by *Calder*. *Id.* at 228–29.

The Supreme Court's subsequent decision in *California Department of Corrections v. Morales*, —— U.S. ——, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) provides a significant explanation of why the procedural changes in *Dobbert* did not violate the Ex Post Facto Clause when applied retroactively. The Court in *Morales* was dealing with a change in the law to provide a certain class of prisoners with fewer parole hearings. The petitioner in *Morales* had never been granted parole under the old law. The Court held

that the petitioner's ex post facto claim failed because he could not demonstrate that the change in parole procedures created more than a speculative risk of increasing his punishment. *Id.* at ——, 115 S.Ct. at 1603.

In this case, Johnson is similarly unable to demonstrate that an increase in his punishment actually occurred, because, like the petitioner in *Morales*, he had not been granted parole under the old law. *Morales*, —— U.S. at ——, 115 S.Ct. at 1600. Under the old law, the BPT's decision would have been subjected to no review. Johnson's case is like *Dobbert*, where the petitioner could only speculate whether the jury would have imposed a life sentence had it possessed the final power to decide. *Dobbert*, 432 U.S. at 294 & n. 7, 97 S.Ct. at 2299 & n. 7. Here, because the BPT's parole decision is not final until after the expiration of the thirty-day gubernatorial review period, it cannot be said with certainty that the BPT would have granted Johnson parole had it possessed the final review authority.

■ Johnson argues that, unlike the administrative convenience purpose of the law in *Morales*, the purpose and effect of the law here is to lengthen prison terms by making it more difficult for convicted murderers with indeterminate sentences to be released on parole. However, the law itself is neutral inasmuch as it gives the governor power to either affirm or reverse a BPT's granting or denial of parole. Moreover, the governor must use the same criteria as the BPT. The law, therefore, simply removes final parole decisionmaking authority from the BPT and places it in the hands of the governor. We cannot materially distinguish this change in the law from that at issue in *Mallett v. North Carolina*, 181 U.S. at 590, 21 S.Ct. at 731. In *Mallett*, the Court found no ex post facto violation where the new law allowed for higher court review of intermediate court decisions, even though the petitioner would have been entitled to a final intermediate court decision at the time of his crime. *Id.* at 597, 21 S.Ct. at 733. We therefore conclude that the application of Proposition 89 to authorize the governor's review of Johnson's grant of parole did not violate the Ex Post Facto Clause.

This conclusion is supported by Ninth Circuit authority that instructs us to look to the actual effect of the new law upon the petitioner. In *Nulph v. Faatz*, 27 F.3d 451 (9th Cir.1994) (per curiam), for example, we dealt with an Oregon law that changed the method of calculating the matrix range for determining a prisoner's parole release date. Rather than holding that the law could be applied retroactively because it was a procedural change, we held that the law violated ex post facto principles when applied to prisoners for whom the change "always operated detrimentally." *Id.* at 456. We recognized that there could well be other prisoners for whom the law change did not operate adversely and for whom it should be applied retroactively. In *Nulph*, however, the sentence increase for a certain class of prisoners was a mathematical certainty. *Id.* In order for Johnson to demonstrate a similar, inevitable increase in his sentence, he would have to show "with assurance", to use the *Dobbert* language, quoted in *Nulph*, that he would have received parole under the old system. This Johnson simply cannot do.

■ Cases assessing the effects of sentencing guidelines amendments also require that the prisoner demonstrate an increase in punishment with certainty before finding an Ex Post Facto Clause violation. Generally, a district court must apply the guidelines in effect on the date the defendant is sentenced. However, it is well-established in this circuit that whenever application of an amended version of a guideline would result in a harsher sentence than the earlier version, application of the new guideline would violate the Ex Post Facto Clause. *See Hamilton v. United States*, 67 F.3d 761, 764–65 (9th Cir.1995); *United States v. Johns*, 5 F.3d 1267, 1271–72 (9th Cir.1993). Under such circumstances, we require that the defendant be sentenced pursuant to the guidelines in effect at the time of the offense. *United States v. Garcia–Cruz*, 40 F.3d 986, 987 (9th Cir.1994). Our law in this regard is wholly in accord with the law of other circuits which have discussed these problems from the standpoint of ex post facto principles. *See United States v. Menon*, 24 F.3d 550, 566 (3rd Cir.1994); *United States v. Edgar*, 971 F.2d 89, 93 n. 4 (8th Cir.1992);

*United States v. Calverley*, 37 F.3d 160, 165 (5th Cir.1994). Because we cannot say with any similar certainty that the retroactive application of Proposition 89 in Johnson's case resulted in an actual increase in punishment called for under prior law, the application did not violate ex post facto principles and the district court correctly denied relief.

AFFIRMED.