**Brian THOMAS, Petitioner,**

v.

**James A. YATES, Respondent.**

**No. 1:05–cv–01198–LJO–JMD–HC.**

United States District Court, E.D. California.

June 17, 2009.

Marc E. Grossman, Law Offices of Marc E. Grossman, Upland, CA, for Petitioner.

Maria G. Chan, California Attorney General's Office, Sacramento, CA, for Respondent.

## ORDER DENYING RESPONDENT'S REQUEST FOR DISMISSAL

## ORDER DENYING RESPONDENT'S MOTION FOR RECONSIDERATION

## ORDER DIRECTING MAGISTRATE JUDGE TO RESCHEDULE EVIDENTIARY HEARING

LAWRENCE J. O'NEILL, District Judge.

## I. Introduction

Petitioner is a former inmate proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Petitioner filed the instant petition on September 19, 2005, while in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). The petition does not challenge Petitioner's conviction or sentence; rather, the petition asserts that the state's denial of parole to Petitioner in 2004 violated Petitioner's rights under the Due Process Clause of the Fourteenth Amendment and Ex Post Facto Clause of the United States Constitution.

On March 19, 2009, the Magistrate Judge entered an order scheduling an evidentiary hearing in order to permit Petitioner to present evidence relevant to his ex post facto claim. (Doc. 27). Respondent filed a motion for reconsideration of the order setting the evidentiary hearing

on April 2, 2009. (Doc. 28). On April 10, 2009, Petitioner filed an opposition to Respondent's motion for reconsideration. (Doc. 29). Petitioner's opposition revealed that Petitioner was released on parole on April 9, 2009. Accordingly, the Court issued an order vacating the hearing date for Respondent's motion to reconsider and ordered the parties to brief the issue of whether or not the petition should be dismissed as moot ("OSC"). (Doc. 30). Petitioner filed a reply to the OSC on May 17, 2009. Respondent filed a reply on May 18, 2009.

## II. Mootness

### A. Petitioner's Alleged Injury May Be Redressed by the Court

A case becomes moot when it no longer satisfies the case-or-controversy requirement of Article III, section 2, of the Constitution. *E.g., Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998). The case-or-controversy requirement demands that, through all stages of federal judicial proceedings, the parties continue to have a personal stake in the outcome of the lawsuit. *Id.* A habeas petition is moot where a petitioner's claim for relief cannot be redressed by a favorable decision of the court issuing a writ of habeas corpus. *Burnett v. Lampert*, 432 F.3d 996, 1000–01 (9th Cir.2005) (quoting *Spencer*, 523 U.S. at 7, 118 S.Ct. 978). The burden of demonstrating mootness is a heavy one. *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir.2001) (citations omitted).

---

1. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies to all petitions for writ of habeas corpus filed after its enactment. *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586, 139 L.Ed.2d 423 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir.

1996), *cert. denied*, 520 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997), *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

■ Under California law, "an inmate-turned-parolee remains in the legal custody of the [CDCR] through the remainder of his term, and must comply with all of the terms and conditions of parole, including mandatory drug tests, restrictions on association with felons or gang members, and mandatory meetings with parole officers." *Samson v. California,* 547 U.S. 843, 851, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006). The restrictions imposed on a parolee constitute a concrete injury for the purposes of mootness analysis. *See, e.g., Spencer,* 523 U.S. at 7–8, 118 S.Ct. 978 (restrictions imposed by the terms of the parole constitute a concrete injury); *Jones v. Cunningham,* 371 U.S. 236, 243, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) (same). Accordingly, Petitioner's cause is not moot if the Court can fashion a remedy to redress Petitioner's injury.

■ The OSC was based in part on the Court's construction of California Penal Code section 3000.1, which provides that the parole period for prisoners sentenced to indeterminate life sentences is the remainder of the parolee's life. Petitioner points out, correctly, that section 3000.1 does not apply to Petitioner, as Petitioner's commitment offense occurred before the effective date of section 3000.1. *See In re Chaudhary,* 172 Cal.App.4th 32, 34, 90 Cal. Rptr.3d 678 (Cal.Ct.App.2009) (stating that section 3000.1 applies to crimes committed after January 1, 1983). At the time Petitioner committed his crime, the maximum period of parole for a person convicted of second degree murder was five years. *See In re Carabes,* 144 Cal.App.3d 927, 930, 193 Cal.Rptr. 65 (Cal.Ct.App.1983) (stating that prior to enactment of California Penal Code section 3000.1, section 3000 established maximum parole period for second degree murder of five years).

■ The Court finds that the petition is not moot, as Petitioner's parole term is determinate and not subject to the lifetime parole requirement set forth in California Penal Code section 3000.1. *Compare Chaudhary,* 172 Cal.App.4th at 38, 90 Cal. Rptr.3d 678 (no credit for time spent unlawfully incarcerated with respect to parole term governed by California Penal Code section 3000.1(a)) *with Carlin v. Wong,* 2008 WL 3183163 *2, 2008 U.S. Dist. LEXIS 63116 *5 (N.D.Cal.2008) (surplus time that petitioner was incarcerated beyond his parole date should be credited toward his determinate parole period). The Court may afford Petitioner a remedy, despite his release from prison, by issuing an order directing the CDCR to credit time served in prison in violation of Petitioner's constitutional rights towards Petitioner's determinate period of parole supervision. *See McQuillion v. Duncan,* 342 F.3d 1012, 1015 (9th Cir.2003) (noting that appropriate habeas remedy was immediate release without parole supervision where petitioner's parole supervision period would have lapsed but for constitutional violation); *see also Thompson v. Carey,* 2009 WL 453053 *27, 2009 U.S. Dist. LEXIS 13482 *83 (E.D.Cal.2009) ("[i]f the Governor had not reversed the Board's suitability finding in November 2003, petitioner's five year parole term ... would now be complete ... [t]herefore, petitioner should be discharged from parole").

## B. Respondent's Contentions

Respondent contends that the petition is moot because 1) Petitioner has been granted parole and has thus received the remedy sought in the petition; 2) Petitioner has received the process due to him; 3) the Court may not order reduction of Petitioner's parole term because the length of his parole term is solely an issue of state law; and 4) reducing or eliminating Petitioner's period of parole supervision would thwart the legislative purpose behind California's parole scheme.

### 1) Petitioner Has Not Received All the Relief Requested

Some courts have held that release on parole moots a habeas petition concerning denial of parole on the theory that once released, the petitioner has obtained the relief sought in the petition. *E.g., Ellis v. Campbell*, 2007 WL 2009802 at *3, 2007 U.S. Dist. LEXIS 48980 at *8 (E.D.Cal. 2007). Here, however, Petitioner's initial request for relief asks the Court to order the CDCR to "credit [Petitioner's] parole term with the time during which he has been confined in prison in excess of his term calculated by the [parole board] at his June 30, 2004 parole hearing, and to discharge his parole if its term is exceeded thereby." (Pet. at 41). Accordingly, Petitioner has not received all of the relief requested in his petition.

### 2) Respondent's Due Process Argument

Respondent's argument that the petition is moot because Petitioner has now received all the process due to him is incorrect. Although Petitioner asserts a due process claim, the petition also raises an ex post facto challenge, which does not hinge on the process Petitioner has been afforded. With respect to Petitioner's ex post facto claim, the question is whether an ex post facto violation occurred in 2004; if so, Petitioner is entitled to relief regardless of the process afforded to him in 2009.

### 3) State Law Argument

 Respondent contends that the Court may not shorten the duration of Petitioner's parole supervision because the length of a prisoner's parole term is solely an issue of state law. Respondent cites no authority for this proposition. Although California law determines the terms of a prisoner's parole, it is the duty of a federal habeas court to determine whether such parole custody violates the prisoner's constitutional rights; if so, the Court may grant relief. *See Carey*, 2009 WL 453053 *27, 2009 U.S. Dist. LEXIS 13482 *83.

Respondent's argument that "the Supreme Court has not addressed whether a state inmate is entitled to have time taken off his parole period" is irrelevant. (Response to Order to Show Cause at 4). Nothing in section 2254 requires that the *remedy* for a constitutional violation be "clearly established." Federal habeas courts are "free to fashion the remedy as law and justice require," and can do more than simply ordering a petitioner's release from physical custody. *Sanders v. Ratelle*, 21 F.3d 1446, 1461 (9th Cir.1994). Respondent's contention that "there is no precedent allowing federal courts to require a life inmate's release on parole," (Response to Order to Show Cause at 4), is incorrect, *see McQuillion*, 342 F.3d at 1015 (affirming habeas grant to prisoner serving indeterminate life sentence).

### 4) Legislative Purpose of California's Parole Scheme

Respondent cites *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) in support of its contention that the legislative purpose of California's parole scheme precludes the Court from granting Petitioner relief. (Response to Order to Show Cause at 4). *Estelle* is of no help to Respondent, as that case states simply that a federal habeas court is bound by the state's interpretation of its own laws. Respondent points to no authority—state or federal—that stands for the proposition that a federal habeas court may not shorten the duration of a parolee's period of parole supervision in order to vindicate the parolee's constitutional rights. The Court may not ignore alleged violations of Petitioner's constitutional rights simply because parole supervision is helpful to many parolees. *See Jones*, 371 U.S. at 243, 83 S.Ct. 373. "It is not relevant that [parole] conditions and restrictions ... may be desirable and important parts of the rehabilitative process; what matters is that they significantly restrain

petitioner's liberty to do those things which in this country free men are entitled to do." *Id.* at 242–43, 83 S.Ct. 373.

## III. Motion for Reconsideration[2]

### A. Petitioner's Ex Post Facto Claim

Petitioner contends that article V, section 8(b) of the California Constitution, pursuant to which the Governor has reversed two parole board decisions granting Petitioner parole, violates the Ex Post Facto Clause of the United States Constitution. The Los Angeles Superior Court held that Petitioner's ex post facto claim was foreclosed as a matter of law in the only reasoned decision provided by the state.[3]

The Superior Court did not conduct an evidentiary hearing or make any factual findings regarding Petitioner's ex post facto claim.

 The Ex Post Facto Clause prohibits the states from enacting retroactive laws that increase the punishment for a crime after its commission. U.S. Const., Art. I § 10; *e.g., Garner v. Jones,* 529 U.S. 244, 249–50, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000) (citing *Collins v. Youngblood,* 497 U.S. 37, 42, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990)). Even facially neutral laws that are procedural in nature may violate the Ex Post Facto Clause. *See, e.g., id.* ("not every retroactive procedural change creating a risk of affecting an inmates terms or conditions of confinement is prohibited"); *see also Collins,* 497 U.S. at 46, 110 S.Ct. 2715 ("labeling a law 'procedural'... does not thereby immunize it from scrutiny under the Ex Post Facto Clause"). The constitutional prohibition on ex post facto laws applies only to penal statutes which disadvantage the offender affected by them. *Collins,* 497 U.S. at 41, 110 S.Ct. 2715 (citing *Calder v. Bull,* 3 U.S. 386, 390–392, 3 Dall. 386, 1 L.Ed. 648 (1798) (opinion of Chase, J.)). The Ex Post Facto Clause's prohibition on retroactive laws that increase the punishment for a crime is clearly established federal law for the purposes of 28 U.S.C. § 2254. *See, e.g., Brown v. Palmateer,* 379 F.3d 1089, 1095 (9th Cir.2004) (applying *Garner* to ex post facto analysis of parole law under AEDPA review).

 Retroactive changes to a state's parole laws, in some instances, may be violative of the Ex Post Facto Clause. *Garner,* 529 U.S. at 250, 120 S.Ct. 1362 (citing *Lynce v. Mathis,* 519 U.S. 433, 445–46, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997)). In order to establish an ex post facto violation based on a state's retroactive application of a parole statute, a prisoner must demonstrate that the new statute "creates a significant risk of prolonging [the prisoner's] incarceration." *Id.* Ex post facto analysis of a facially neutral parole law requires a case-specific, fact-intensive analysis regarding the risk posed by the law to the particular prisoner challenging its application. *See, e.g., id.* (prisoner "must show that as applied to *his own* sentence the law created a significant risk of increasing his punishment") (emphasis added). Accordingly, on March 19, 2009, the Magistrate Judge scheduled an evidentiary hearing in this matter in order to permit Petitioner to present evidence that, as applied to him, article V, section 8(b) presents a "significant risk" of prolonging his incarceration,

---

**2.** The Court finds that a hearing on Respondent's motion for reconsideration is unnecessary. E.D. Cal. R. 78–230(h).

**3.** The California Court of Appeal and California Supreme Court summarily denied Petitioner's state habeas petitions. In reviewing a state court's summary denial of a habeas petition, the Court must "look through" the summary disposition to the last reasoned decision issued by the state. *Ylst v. Nunnemaker,* 501 U.S. 797, 806, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

pursuant to *Garner.* Respondent filed a motion to reconsider the Magistrate Judge's order scheduling an evidentiary hearing on April 2, 2009.

### B. Respondent's Contentions

Respondent's motion for reconsideration may not be granted unless the Magistrate Judge's order setting the evidentiary hearing is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a). Respondent advances four arguments in support of its contention that the Magistrate Judge's order is clearly erroneous or contrary to law. Respondent contends that (1) section 2254(e)(2) prohibits the Court from holding an evidentiary hearing; (2) the state court's decision denying Petitioner's state habeas petition is not contrary to or an unreasonable application of clearly established federal law; (3) *Johnson v. Gomez,* 92 F.3d 964 (9th Cir. 1996) forecloses Petitioner's claim; and (4) the Court may not consider Petitioner's parole history subsequent to 2004.[4]

### 1. Section 2254(e)(2) Does not Preclude and Evidentiary Hearing

■ Rule 8 of the Rules Governing Section 2254 Cases authorizes federal habeas courts to hold evidentiary hearings, subject to the limitations of 28 U.S.C. § 2254(e)(2). Section 2254(e)(2) prevents federal habeas courts from holding an evidentiary hearing where the petitioner failed to develop the factual basis of a claim in state court proceedings, unless certain conditions are met:

> (e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

> (A) the claim relies on—

> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (2009). "Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor,* 529 U.S. 420, 432, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). "If there has been no lack of diligence at the relevant stages in the state proceedings, the prisoner has not 'failed to develop' the facts under § 2254(e)(2)'s opening clause." *Id.* at 437, 120 S.Ct. 1479. A petitioner is entitled to an evidentiary hearing if he can show that:

> (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair hearing.

---

**4.** Respondent's argument in section I(D) of the motion for reconsideration is not relevant to the threshold inquiry of whether the Court may conduct an evidentiary hearing. Rather,

Respondent's argument concerns only the scope of the evidence which may be presented at the hearing.

*Earp v. Ornoski,* 431 F.3d 1158, 1167 (9th Cir.2005) (citing *Townsend v. Sain,* 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) *overruled on other grounds by Keeney v. Tamayo–Reyes,* 504 U.S. 1, 5, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992)).

 Petitioner presented the essential facts underlying his ex post facto claim to the state court by establishing that the Governor reversed two grants of parole to Petitioner pursuant to a retroactive statute. (Answer, Ex. E at 27–28). In his state habeas petition before the Superior Court, Petitioner averred:

> Imposition of a new obstacle to his parole, almost certain gubernatorial reversal, which has extended his prison term . . . and has extinguished two valid grants of petitioner's parole by BPT to date, constitutes a classic example of ex post facto. (Citations).

*(Id.).* Petitioner also identified the appropriate evidentiary standard the Superior Court should have applied to Petitioner's claim:

> Petitioner, to establish an ex post facto violation, need not prove that he is necessarily serving a longer prison term due to the new law than would have been the case had it not been encated . . . his obligation [is] to establish that application of the new law to his case created a "significant risk of increasing his punishment." *See Garner v. Jones* (2000) 529 U.S. 244, 256 [120 S.Ct. 1362, 146 L.Ed.2d 236].

*(Id.).* Petitioner produced his parole history, the transcript of his 2004 parole hearing, the Governor's reversal letter, and an internal CDCR memo concerning the Governor's practice of reviewing parole grants, but not parole denials, as evidence that article V, section 8(b) presents a risk of prolonging Petitioner's incarceration. This evidence was sufficient to develop the factual basis of Petitioner's ex post facto claim.

Despite the fact that Petitioner adequately developed the factual basis of his claim and requested that the Superior Court apply the appropriate evidentiary standard to the evidence, the Superior Court held that Petitioner's claim was foreclosed as a matter of law by *In re Rosenkrantz,* 29 Cal.4th 616, 691, 128 Cal. Rptr.2d 104, 59 P.3d 174 (Cal.2002).[5] The Superior Court's holding that *Rosenkrantz* barred Petitioner's ex post facto claim as a matter of law precluded Petitioner from developing further evidence in support of his claim before the state courts. The Superior Court would not have held an evidentiary hearing unless it determined that Petitioner's entitlement to relief depended on resolution of an issue of fact, *see* Cal. R. Ct. § 4.551(f) (Thompson–West, 2005),[6] and the Superior Court's holding

5. The Superior Court devoted two sentences to Petitioner's ex post facto claim: "the Court rejects the remainder of petitioner's arguments including that the Governor's reversal constitutes an ex post facto violation . . . the court has already concluded that the Governor's review does not amount to an ex post facto violation. (*Rosenkrantz,* supra, at 637–652, 128 Cal.Rptr.2d 104, 59 P.3d 174)." (Answer, Ex. F). The Superior Court's language reflects a statement of law, not a determination of facts.

6. California amended Rule 4.551 effective January 1, 2009, but the amendment did not implicate section 4.551(f). Section 4.551(f) provides in relevant part: "Within 30 days after the filing of any denial or, if none is filed, after the expiration of the time for filing a denial, the court must either grant or deny the relief sought by the petition or order an evidentiary hearing. An evidentiary hearing is required if, after considering the verified petition, the return, any denial, any affidavits or declarations under penalty of perjury, and matters of which judicial notice may be taken, the court finds there is a reasonable likelihood that the petitioner may be entitled to relief and the petitioner's entitlement to relief depends on the resolution of an issue of fact.

also prevented Petitioner from obtaining discovery. No statutory authority expressly authorizes post-conviction discovery in a California habeas corpus proceeding, *Board of Prison Terms v. Superior Court*, 130 Cal.App.4th 1212, 1240, 31 Cal. Rptr.3d 70 (Cal.Ct.App.2005), and California case law establishes that discovery may not be granted in a habeas action with respect to claims that are foreclosed as a matter of law, *see People v. Gonzalez*, 51 Cal.3d 1179, 1261, 275 Cal.Rptr. 729, 800 P.2d 1159 (Cal.1990) (no discovery on issues that fail to state a prima facie claim).

It is clear that the Superior Court concluded, erroneously, that Petitioner's ex post facto claim was foreclosed as a matter of law; this error prevented Petitioner from further developing evidence in support of his claim. Where a state court's erroneous application of law prevents a petitioner from fully developing the factual basis of her claim in state court, a federal habeas court may conduct an evidentiary hearing. *See Frantz v. Hazey*, 533 F.3d 724, 745 (9th Cir.2008) (where state court concluded, erroneously, that no facts were required to resolve petitioner's claim, federal habeas court was required to hold an evidentiary hearing); *see also Williams v. Runnels*, 432 F.3d 1102, 1110 n. 13 (9th Cir.2006) (section 2254(e)(2) inapplicable where state court applies erroneous legal standard); *Earp*, 431 F.3d at 1166–67 (petitioner entitled to an evidentiary hearing where state court does not afford full and fair hearing on an issue); *Holland v. Jackson*, 542 U.S. 649, 652–53, 124 S.Ct. 2736, 159 L.Ed.2d 683 (2004) (evidentiary hearing permissible where petitioner is not at fault for failing to develop evidence in state court). Accordingly, because the Court finds that Petitioner exercised reasonable diligence in presenting the factual

basis of his claim before the state courts, that the merits of the factual dispute were not resolved in the state court proceedings, and that the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing, Petitioner is entitled to an evidentiary hearing in this federal habeas action. *See Earp*, 431 F.3d at 1167.

### 2. AEDPA Deference Does Not Preclude an Evidentiary Hearing

Respondent contends that "the state courts' decisions [denying Petitioner's state habeas petitions] ... are not contrary to clearly established federal law, as an as-applie [sic] analysis is not required." (Motion for Reconsideration at 7). Respondent's contention is based on its assertion that the standard set forth by the United States Supreme Court in *Garner* does not apply to article V, section 8(b). (*Id.* at 7–8). Respondent also argues that because the California Supreme Court's holding in *In re Rosenkrantz*, 29 Cal.4th 616, 128 Cal.Rptr.2d 104, 59 P.3d 174 (Cal. 2002) was reasonable, the Superior Court's order denying Petitioner's state habeas petition was also reasonable because the Superior Court cited to *Rosenkrantz*. (*Id.*)

#### (i) *Garner* "Clearly Established" that an As–Applied Analysis is Required

 In *Garner*, the United States Supreme Court held that retroactive application of a parole statute violates a person's rights under the Ex Post Facto Clause of the United States Constitution if the statute "creates a significant risk of prolonging [the prisoner's] incarceration." 529 U.S. at 255, 120 S.Ct. 1362. Under *Garner*, ex post facto challenges to a fa-

---

The petitioner must be produced at the evidentiary hearing unless the court, for good cause, directs otherwise."

cially neutral parole statute require an as-applied analysis. *E.g., United States v. Turner*, 548 F.3d 1094, 1100 (D.C.Cir. 2008).

■■■■ Respondent attempts to distinguish article V, section 8(b) from the statute at issue in *Garner* on the basis that the statute at issue in *Garner* concerned the interval between parole hearings, whereas article V, section 8(b) grants the Governor the power to reverse parole board decisions.[7] For purposes of ex post facto analysis, the difference between the statute at issue in *Garner* and article V, section 8(b) is irrelevant, as the dispositive inquiry is "whether retroactive application of the change in [parole] law create[s] 'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" *Garner*, 529 U.S. at 250, 120 S.Ct. 1362 (citing *Beazell v. Ohio*, 269 U.S. 167, 169–70, 46 S.Ct. 68, 70 L.Ed. 216 (1925)). "The Supreme Court need not

have addressed the identical factual circumstances at issue in a case in order for it to have created 'clearly established' law governing that case ... rather, it is enough that the Supreme Court has prescribed a rule that plainly governs the petitioner's claim." *McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir.2002).[8] Nine circuit courts of appeals that have confronted ex post facto challenges to parole statutes post-*Garner* have recognized that *Garner* requires an as-applied analysis. *See, e.g., Brown*, 379 F.3d at 1095; *Mickens–Thomas v. Vaughn*, 321 F.3d 374, 385–87 (3rd Cir.2003); *Wallace v. Quarterman*, 516 F.3d 351, 356 (5th Cir.2008); *Michael v. Ghee*, 498 F.3d 372, 383 (6th Cir.2007); *Glascoe v. Bezy*, 421 F.3d 543, 546–47 (7th Cir.2005); *Nolan v. Thompson*, 521 F.3d 983, 988–89 (8th Cir.2008); *Henderson v. Scott*, 260 F.3d 1213, 1216–17 (10th Cir.2001); *Swan v. Ray*, 293 F.3d 1252, 1253–54 (11th Cir.2002); *Turner*, 548

**7.** Respondent's contention that the Court should not subject article V, section 8(b) to *Garner* 's as-applied analysis is contrary to the Ninth Circuit's reasoning in *Johnson v. Gomez*, a case on which Respondent relies heavily. In *Johnson*, the Ninth Circuit rejected an ex post facto challenge to article V, section 8(b) based on the rationale set forth by the Supreme Court in *California Department of Corrections v. Morales*, 514 U.S. 499, 115 S.Ct. 1597, 1603, 131 L.Ed.2d 588 (1995). *Johnson*, 92 F.3d at 967–68. Like the statute at issue in *Garner*, the law challenged in *Morales* granted the parole board discretion to extend the interval between a prisoner's parole hearings. *Morales*, 115 S.Ct. at 1603. The *Johnson* Court took for granted the notion that *Morales* set forth the applicable framework for evaluating the petitioner's challenge to article V, section 8(b), despite the difference between the Governor's review power and the statute at issue in *Morales*. *See Johnson*, 92 F.3d at 967. Thus, *Johnson* holds implicitly that article V, section 8(b) and statutes affecting the interval between parole hearings are sufficiently similar to be evaluated under the same constitutional rubric for the purpose of ex post facto analysis. *See id.*

**8.** *McQuillion* holds that application of the "some evidence" standard to California parole determinations is "clearly established federal law" for the purposes of AEDPA review. The "some evidence" requirement was established by *Superintendent v. Hill*, 472 U.S. 445, 457, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), in which the Supreme Court held that prison disciplinary hearings resulting in the revocation of good-time credits must be supported by "some evidence." Compared to the differences between prison disciplinary hearings and parole determinations, the differences between article V, section 8(b) and the statute at issue in *Garner* are trivial. *See Irons v. Carey*, 506 F.3d 951, 952–56 (9th Cir.2007) (Kleinfeld, J., dissenting) (discussing substantial differences between prison disciplinary proceedings and parole determinations). As the law of the Ninth Circuit holds that *Hill* "clearly established" the some evidence requirement in the parole context for the purposes of AEDPA review, *a fortiori*, *Garner* 's as-applied analysis requirement must be clearly established for the purpose of conducting ex post facto review of facially neutral parole statutes.

F.3d at 1100. District Courts in the First, Second, and Fourth Circuits have also employed *Garner*'s as-applied analysis. *See Iacaboni v. United States,* 251 F.Supp.2d 1015, 1041 (D.Mass.2003); *Graziano v. Pataki,* 2006 WL 2023082 *10–11, 2006 U.S. Dist. LEXIS 52556 *30–33 (S.D.N.Y.2006); *Bennett v. LaManna,* 2007 WL 781679 *7–8, 2007 U.S. Dist. LEXIS 21601 *22–23 (D.S.C.2007).

The law of the Ninth Circuit demonstrates that *Garner* applies to parole statutes that do not implicate the interval between parole hearings. *See Brown,* 379 F.3d at 1096 (applying *Garner* to parole regulation that gave parole board new discretion to find that a prisoner is a danger to the community despite the contrary conclusions of a psychological evaluation); *see also Himes v. Thompson,* 336 F.3d 848, 855 n. 4 (9th Cir.2003) (noting possibility that petitioner could prove an individual ex post facto violation under *Garner* with respect to statute that removed the parole board's ability to grant a continuum of sanctions for aggravated violation of parole in favor of an all-or-nothing choice between a ninety-day sanction and outright denial of release). Other circuit courts of appeals have also applied *Garner* to a wide range of parole statutes that do not implicate the interval between parole hearing. *See Dyer v. Bowlen,* 465 F.3d 280, 288 (6th Cir.2006) (holding that although petitioner's claims were "factually distinguishable from those in *Morales* and *Garner,* the rule of constitutional law pronounced in those cases remains the proper standard by which to measure an ex post facto violation" and applying *Garner* to retroactive statute that increased parole board's discretionary power); *Mickens–Thomas,* 321 F.3d at 385–87 (applying *Garner* to new parole regulation that placed added emphasis on certain pre-existing parole criteria); *Wallace,* 516 F.3d at 355–56 (new parole law increased number of parole board members who voted on suitability

determination); *Glascoe,* 421 F.3d at 548 (new parole criteria); *Ghee,* 498 F.3d at 383 (same); *Turner,* 548 F.3d at 1100 (applying *Garner* to retroactive sentencing guidelines); *Hunter v. United States Parole Comm'n,* 308 Fed.Appx. 856, 858–59 (5th Cir.2009) (unpublished) (retroactive statute establishing new parole guidelines and decision making body). Accordingly, as-applied analysis of ex post facto challenges to facially neutral parole statutes is clearly established federal law for the purposes of AEDPA review. *See Himes,* 336 F.3d at 855 n. 4 (noting that *Garner* codified pre-existing precedent that satisfied the "clearly established" requirement of 28 U.S.C. § 2254(d)(1) and applying *Garner* under AEDPA review); *Brown,* 379 F.3d at 1096 (holding that state court's dismissal of ex post facto claim was objectively unreasonable under AEDPA because state court failed to follow *Garner*'s "express guidance on ex post facto cases"); *see also Wallace,* 516 F.3d at 356 (applying *Garner* to statute that increased number of voting parole board members under AEDPA review); *Hairston v. Kane,* 2009 WL 773431 *11, 2009 U.S. Dist. LEXIS 27072 *29 (N.D.Cal.2009) (applying *Garner* to ex post facto challenge to article V, section 8(b) in AEDPA context); *McGruder v. Schwarzenegger,* 2008 WL 4065827 *4–5, 2008 U.S. Dist. LEXIS 82703 *13 (N.D.Cal. 2008) (same); *Seiler v. Brown,* 2007 WL 2501518 *5, 2007 U.S. Dist. LEXIS 66412 *13 (N.D.Cal.2007) (same); *Heller v. Powers–Mendoza,* 2007 WL 963330 *1 & n. 1, 2007 U.S. Dist. LEXIS 27432 *2–3 & n. 1 (E.D.Cal.2007) (same); *Smith v. Finn,* 2007 WL 214597 *8–9, 2007 U.S. Dist. LEXIS 6186 *26–29 (E.D.Cal.2007) (noting the possibility of ex post facto violation but dismissing claim as moot).

### (ii) Reliance on *In re Rosenkrantz* Does not Render the State Court's Decision Reasonable

The Superior Court cited the California Supreme Court's decision in *In re Rosen-*

*krantz* as authority for its decision denying the ex post facto claim alleged in Petitioner's state habeas petition. In *Rosenkrantz*, the California Supreme Court discussed *Garner* but held that the statute at issue in *Garner* was distinguishable from section V, article 8(b).[9] 29 Cal.4th at 650, 128 Cal.Rptr.2d 104, 59 P.3d 174. The *Rosenkrantz* Court concluded that the Governor's review power does not violate the Ex Post Facto Clause as a matter of law. *Id.* at 651, 128 Cal.Rptr.2d 104, 59 P.3d 174. Respondent contends that a) *Rosenkrantz* was not an unreasonable application of federal law, b) the Superior Court relied on *Rosenkrantz* to deny Petitioner's ex post facto claim, c) therefore the Superior Court's decision was not an unreasonable application of federal law.

Respondent's argument fails to account for the fact that Petitioner's case is distinguishable from the petitioner's case in *Rosenkrantz*. Because *Garner* requires an as-applied analysis of Petitioner's claim, it was unreasonable for the Superior Court to rely on *Rosenkrantz* to deny Petitioner's claim despite the fact that Petitioner's factual circumstance is distinguishable from the petitioner's circumstance in *Rosenkrantz*. In assessing the petitioner's ex post facto claim in *Rosenkrantz*, the California Supreme Court held "petitioner cannot maintain persuasively that in this instance article V, section 8(b), has resulted in the denial of parole of an individual whom the Board, in the exercise of its independent judgment, has determined is suitable for parole." *Rosenkrantz*, 29 Cal.4th at 637–38, 128 Cal.Rptr.2d 104, 59 P.3d 174.[10] Whereas the parole board granted the petitioner in *Rosenkrantz* parole only after an appellate court ordered the board to do so under threat of contempt, Petitioner had been found suitable for parole on at least three separate occasions prior to the Governor's reversal in 2004. The California Supreme Court's statement in *Rosenkrantz* that "petitioner cannot maintain persuasively that in this instance article V, section 8(b), has resulted in the denial of parole of an individual whom the Board, in the exercise of its independent judgment, has determined is suitable for parole," does not apply to Petitioner. Accordingly, it was unreasonable

**9.** The *Rosenkrantz* Court failed to conduct an as-applied analysis of article V, section 8(b) because, in its view, the "procedural nature" of article V, section 8(b) rendered *Garner* inapplicable to it. *Rosenkrantz*, 29 Cal.4th at 650, 128 Cal.Rptr.2d 104, 59 P.3d 174; *contra Dyer*, 465 F.3d at 288–89 (holding that state court's rejection of ex post facto claim on the ground that challenged statute was "procedural in nature" was error under AEDPA standard of review). The *Rosenkrantz* Court's failure to conduct an as-applied analysis is illustrated by the Court's assumption that "were petitioner's ex post facto argument correct, every gubernatorial reversal of a Board decision granting parole in these cases would have been constitutionally flawed." *Id.* at 638, 128 Cal.Rptr.2d 104, 59 P.3d 174. *Garner* teaches, however, that a neutral parole statute may be violative of the Ex Post Facto with respect to some prisoners but not to others. 529 U.S. at 255, 120 S.Ct. 1362 (conducting as-applied analysis of petitioner's

claim); *see also Nulph v. Faatz*, 27 F.3d 451, 456 (9th Cir.1994) (per curiam) (recognizing that "even if the new law is not disadvantageous to defendants in general, an individual will satisfy the detriment requirement [of an ex post facto challenge] if he shows that it can 'be said with assurance' that he would have received less severe punishment under the prior scheme"). It is thus clear that *Rosenkrantz* does not reflect an as applied analysis. *See Heller v. Powers–Mendoza*, 2007 WL 963330 *1 n. 1, 2007 U.S. Dist. LEXIS 27432 *3 n. 1 (E.D.Cal.2007) (disapproving of the holding in *Rosenkrantz* because the *Rosenkrantz* Court failed to conduct proper as-applied analysis under *Garner*).

**10.** Under an as-applied analysis, the California Supreme Court's finding that the petitioner in *Rosenkrantz* could not demonstrate that article V, section 8(b) adversely affected him would have ended the inquiry. *See, e.g., Garner*, 529 U.S. at 255, 120 S.Ct. 1362.

for the Superior Court not to conduct an as-applied analysis of Petitioner's claim based on the holding in *Rosenkrantz*. *See Brown*, 379 F.3d at 1096 (holding that state court was objectively unreasonable for failing to apply *Garner* standard); *see also Parker v. Kelchner*, 429 F.3d 58, 64 n. 5 (3rd Cir.2005) (holding that because *Garner* requires an as-applied analysis, outcome of petitioner's state habeas petition was not a foregone conclusion despite the fact that the Pennsylvania Supreme Court had already rejected ex post facto challenge to statute at issue).

### 3. *Johnson v. Gomez* Does not Foreclose Petitioner's Ex Post Facto Claim

Respondent cites *Johnson v. Gomez* for the proposition that the Ninth Circuit has foreclosed Petitioner's ex post facto challenge to article V, section 8(b). (Answer at 15). Respondent's contention is erroneous for two principal reasons: 1) Respondent's construction of *Johnson* is overbroad; and 2) the facts of Petitioner's case are distinguishable from the facts addressed in *Johnson*, and the Court must conduct an as-applied analysis of Petitioner's claim.

### (i) Respondent's Construction of *Johnson* is Overbroad

A careful reading of *Johnson* reveals that it cannot stand for the proposition that, as a matter of law, article V, section 8(b) never violates the Ex Post Facto Clause. The law of the Ninth Circuit recognized that ex post facto challenges to facially neutral laws require an as-applied analysis at the time *Johnson* was decided. *See Nulph v. Faatz*, 27 F.3d 451, 456 (9th Cir.1994) (per curiam) (recognizing that "even if the new law is not disadvantageous to defendants in general, an individual will satisfy the detriment requirement [of an ex post facto challenge] if he shows that it can 'be said with assurance' that he would have received less severe punishment under the prior scheme"). The *Johnson* Court expressly acknowledged *Nulph*, stating, "Ninth Circuit authority . . . instructs us to look to the actual effect of the new law *upon the petitioner.*" *Johnson*, 92 F.3d at 968 (citing *Nulph*, 27 F.3d at 451) (emphasis added). Viewed in light of *Nulph*, the Ninth Circuit's precise holding in *Johnson* was "that the application of [article V, section 8(b) ] to authorize the governor's review of *Johnson's* grant of parole did not violate the Ex Post Facto Clause" because *Johnson* "could not demonstrate that the change in parole procedures created more than a speculative risk of increasing *his* punishment." 92 F.3d at 967–68 (emphasis added). Although *Johnson* does contain the broad pronouncement that "the district court correctly recognized that ex post facto principles do not bar application of [article V, section 8(b) ] to those convicted and sentenced before its effective date," *Johnson*, 92 F.3d at 965, to the extent this statement was meant to reach persons with claims that are factually distinguishable from the petitioner's claim in *Johnson*, this statement is technically dicta because it was unnecessary to the decision, *see, e.g., In re Primus*, 436 U.S. 412, 439, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978) (Blackmun, J., concurring) (rejecting as dicta statements unnecessary to the holding of a case).

Respondent's construction of *Johnson* also ignores the impact of the Supreme Court's intervening decision in *Garner*, which refined the standard applicable to ex post facto challenges to facially neutral parole laws. Prior to 1995, the Ninth Circuit employed a nebulous standard to ex post facto challenges to parole statutes that required a prisoner to demonstrate only that a retroactive parole law operated to her "disadvantage." *See, e.g., Watson v. Estelle*, 886 F.2d 1093, 1096–96 (9th Cir. 1989) (rejecting prisoner's claim where retroactive law that changed timing of parole

hearings did not operate to prisoner's disadvantage); *Perveler v. Estelle,* 974 F.2d 1132, 1135 (9th Cir.1992) ("to make out an Ex Post Facto violation, Perveler must show the law was retrospectively applied and operated to his disadvantage") (citing *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)); *Connor v. Estelle,* 981 F.2d 1032 (9th Cir.1992) (rejecting claim on the grounds that prisoner had not been disadvantaged by retroactive parole statute). The Ninth Circuit's ex post facto standard reached its outer limit in *Morales v. California Dep't of Corrections,* 16 F.3d 1001, 1004 (9th Cir. 1994) *overruled by* 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995), in which the Ninth Circuit held, "any retrospective law making parole hearings less accessible would effectively increase the sentence and violate the ex post facto clause."

*Morales* concerned a challenge to the retroactive application of California Penal Code section 3041.5(b)(2), pursuant to which the Board of Prison Terms (BPT) was given the statutory authority to delay subsequent parole hearings for up to three years for prisoners convicted of committing multiple murders. 514 U.S. at 503, 115 S.Ct. 1597. The operative parole statute in place at the time the petitioner in *Morales* completed his commitment offense required the BPT to conduct annual parole hearings for all prisoners eligible for parole. In reversing the Ninth Circuit's holding that section 3041.5(b)(2) violated

the Ex Post Facto Clause, the Supreme Court stated that in order to determine:

the constitutionality of the 1981 amendment, we must determine whether it produces a *sufficient risk* of increasing the measure of punishment attached to the covered crimes. We have previously declined to articulate a single "formula" for identifying those legislative changes that have a sufficient effect on substantive crimes or punishments to fall within the constitutional prohibition, *and we have no occasion to do so here.* The amendment creates only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes, and such conjectural effects are insufficient under *any* threshold we might establish under the Ex Post Facto Clause.

*Id.* at 509–10, 115 S.Ct. 1597 (citations omitted) (emphasis added).[11]

As noted in the passage above, *Morales* did not impose a standard for determining what constitutes a "sufficient risk" of increasing the measure of punishment such that retroactive application violates the Ex Post Facto Clause. *Id.* Thus, when the Ninth Circuit decided *Johnson* approximately one year after the Supreme Court's decision in *Morales,* the High Court had not yet defined the standard applicable to ex post facto claims regarding facially neutral parole laws. In attempting to discern the appropriate standard with which to

---

**11.** The fact that section 3041.5(b)(2) "has no effect on any prisoner unless the [BPT] has first concluded, after a hearing, not only that the prisoner is unsuitable for parole, but also that 'it is not reasonable to expect that parole would be granted at a hearing during the following years,' " was crucial to the Supreme Court's holding in *Morales. Id.* at 511, 115 S.Ct. 1597. The Supreme Court also noted that section 3041.5(b)(2) applies only to "a class of prisoners for whom the likelihood of release on parole is quite remote." *Id.* Because the BPT had already found that Morales

was not suitable for parole and that there was no reason to expect parole would be granted during the following years, and because Morales was a member of a class of prisoners for whom release on parole was already remote, the practical effect of a hearing postponement pursuant to section 3041.5(b)(2) was not significant. *See id.* at 512–13, 115 S.Ct. 1597. Given *these circumstances,* Morales could demonstrate nothing more than "the most speculative and attenuated risk" that section 3041.5(b)(2) would increase the punishment for his crimes. *See id.*

evaluate the petitioner's ex post facto claim in *Johnson,* the Ninth Circuit relied principally on *Morales* and *Dobbert v. Florida,* 432 U.S. 282, 294, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977) [12]:

> Johnson is ... unable to demonstrate that an increase in his punishment *actually occurred,* because, like the petitioner in *Morales,* he had not been granted parole under the old law. *Morales,* 115 S.Ct. at 1600. Under the old law, the BPT's decision would have been subjected to no review. Johnson's case is like *Dobbert,* where the petitioner could only speculate whether the jury would have imposed a life sentence had it possessed the final power to decide. *Dobbert,* 432 U.S. at 294 & n. 7, 97 S.Ct. 2290. Here, because the BPT's parole decision is not final until after the expiration of the thirty-day gubernatorial review period, it cannot be said *with certainty* that the BPT would have granted Johnson parole had it possessed the final review authority ... ¶ In *Nulph* ....the sentence increase for a certain class of prisoners was a mathematical certainty. *Id.* In order for Johnson to demonstrate a similar, *inevitable* increase in his sentence, he would have to show "with assurance," to use the *Dobbert* language, quoted in *Nulph,* that he *would have* received parole under the old system. This Johnson simply cannot do.

*Johnson,* 92 F.3d at 967–68 (emphasis added).[13]

**12.** *Dobbert* concerned a Florida law that changed the roles of the judge and jury with respect to imposition of a death sentence. 432 U.S. at 290, 97 S.Ct. 2290. Under the revised Florida statute, applied retroactively to Dobbert, the jury renders an advisory decision, and the judge then weighs the circumstances and determines whether or not to impose the death sentence. *Id.* at 291–92, 97 S.Ct. 2290. The jury recommended that Dobbert be sentenced to life in prison, but the trial judge sentenced Dobbert to death. *Id.* It is clear that the *Dobbert* Court did not conduct an "as-applied" analysis; rather, the court held that the new law was "facially ameliorative" compared to the previous Florida law, under which the death penalty was the default punishment for capital crimes. *See id.* at 296–97, 97 S.Ct. 2290. Because the statute implicated by *Dobbert* was facially ameliorative, it could not possibly have presented a significant risk of increasing Dobbert's punishment. Under the previous sentencing scheme, Dobbert would have received the death penalty as a matter of course.

**13.** The *Johnson* Court also stated, "We cannot materially distinguish this change in the law from that at issue in *Mallett v. North Carolina,* 181 U.S. [589] at 590, 21 S.Ct. [730] at 731 [45 L.Ed. 1015 (1901)]." In *Mallett,* the Supreme Court found no ex post facto violation where a new law authorized the North Carolina Supreme Court to review appellate court decisions overturning a person's conviction. Under the statute in place at the time the petitioner in *Mallett* committed his crime, the appellate court's decision overturning his conviction would have been final. *Mallett* predates *Garner* by ninety-nine years. Further, the statute at issue in *Mallett* did not concern the discretionary decisions of elected officials but rather the legal conclusions of state appellate courts, which are less susceptible to the political pressures that undergird the Ex Post Facto Clause. *See Richmond v. J.A. Croson Co.,* 488 U.S. 469, 513–514, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989) ("The constitutional prohibitions against the enactment of ex post facto laws and bills of attainder reflect a valid concern about the use of the political process to punish or characterize past conduct of private citizens. It is the judicial system, rather than the legislative process, that is best equipped to identify past wrongdoers and to fashion remedies that will create the conditions that presumably would have existed had no wrong been committed") (Stevens, J., concurring); *see also*; *Landgraf v. USI Film Prods.,* 511 U.S. 244, 266, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) ("The Legislature's unmatched powers ... [and] responsivity to political pressures poses a risk that it may be tempted to use retroactive legislation as a means of retribution against unpopular groups or individuals"); *Calder,* 3 U.S. 386, 387–389 (opinion of Chase, J.) (discussing rationale for ex post facto clause).

The Ninth Circuit concluded its decision in *Johnson* by analogizing the petitioner's situation to ex post facto jurisprudence in the sentencing context:

> Cases assessing the effects of sentencing guidelines amendments also require that the prisoner demonstrate an increase in punishment *with certainty* before finding an Ex Post Facto Clause violation ... Because we cannot say with any *similar certainty* that the retroactive application of Proposition 89 in Johnson's case resulted in an *actual increase* in punishment called for under prior law, the application did not violate ex post facto principles and the district court correctly denied relief.

*Johnson*, 92 F.3d at 968 (emphasis added).[14]

Although *Morales* expressly disclaimed establishment of a single "formula" for identifying ex post facto violations, it is clear that the *Johnson* Court inferred a lofty standard of proof from the result reached in *Morales*. The language emphasized in the passages above indicates that the *Johnson* Court imposed an onerous evidentiary standard-petitioner would have had to demonstrate "with certainty" that his punishment would have been "actually" or "inevitably" increased. *See id.* at 967. After *Garner*, however, it is clear that a petitioner need not demonstrate that his punishment was increased "with certainty." *See, e.g., Brown*, 379 F.3d at 1096 (applying *Garner* standard without referencing *Johnson*'s certainty standard); *see also Dyer*, 465 F.3d at 288 (stating that

Tennessee Court of Appeal's holding, that petitioner must show that new parole regulation actually increased his sentence in order to obtain relief, was contrary to clearly established federal law set forth in *Garner*). The standard articulated by the Supreme Court in *Garner* is clearly less burdensome than the standard applied in *Johnson*:

> When the rule does not by its own terms show a significant risk, the respondent must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule. The litigation in Morales concerned a statute covering inmates convicted of more than one homicide and proceeded on the assumption that there were no relevant differences between inmates for purposes of discerning whether retroactive application of the amended California law violated the Ex Post Facto Clause. *In the case before us, respondent must show that as applied to his own sentence the law created a significant risk of increasing his punishment.* This remains the issue in the case, though the general operation of the Georgia parole system may produce relevant evidence and inform further analysis on the point.

*Garner*, 529 U.S. at 255, 120 S.Ct. 1362 (emphasis added). Thus, *Garner* teaches that Petitioner may be entitled to relief if he can establish that as applied to him, article V, section 8(b) creates a "significant risk" of prolonging his incarceration.[15] Pe-

---

**14.** The United States Court of Appeals for the District of Columbia Circuit applies *Garner* in the sentencing context. *See Turner*, 548 F.3d at 1100.

**15.** *Garner* also reveals that a fundamental premise underlying the rationale in *Johnson* is flawed. The *Johnson* Court stated, "Johnson is ... unable to demonstrate that an increase in his punishment actually occurred,

because, *like the petitioner in Morales, he had not been granted parole under the old law." Johnson*, 92 F.3d at 967–68 (emphasis added) (citing *Morales*, 115 S.Ct. at 1600). In *Garner*, however, the Supreme Court held that a prisoner who had not been paroled under a previous Georgia parole statute could nevertheless demonstrate that a new Georgia parole statute violated the Ex Post Facto Clause by showing that the new statute created a

titioner need not show "with certainty" that he would have been granted parole sooner under the previous parole statute. *See id.*

In several cases decided after *Garner*, the Ninth Circuit evaluated ex post facto challenges to parole laws under *Garner*'s "significant risk" standard without reference to *Johnson* or its "certainty" requirement. *See Brown*, 379 F.3d at 1095 (applying *Garner*); *see also Himes v. Thompson*, 336 F.3d 848, 851–53 (9th Cir. 2003) (same); *Scott v. Baldwin*, 225 F.3d 1020, 1022 n. 5 (9th Cir.2000) (recognizing "significant risk" standard as an alternative to facial challenge to parole statutes); *Hess v. Hill*, 265 Fed.Appx. 637, 638 (9th Cir.2008) (unpublished) ("[parole board] may not apply a parole release statute that was not in effect at the time the prisoner committed his crimes if it . . . [creates] a significant risk that the statute's application will increase the length of incarceration"). Several District Court's in the Ninth Circuit have held that *Garner* now provides the applicable standard for evaluating ex post facto challenges to article V, section 8(b). *See Hairston v. Kane*, 2009 WL 773431 *11, 2009 U.S. Dist. LEXIS 27072 *29 (applying *Garner* to ex post facto challenge to article V, section 8(b) in AEDPA context); *Seiler v. Brown*, 2007 WL 2501518 *5, 2007 U.S. Dist. LEXIS

66412 *13 (noting *Johnson* but proceeding to evaluate petitioner's claim under *Garner*); *Heller v. Powers–Mendoza*, 2007 WL 963330 *1 & n. 1, 2007 U.S. Dist. LEXIS 27432 *2–3 & n. 1 (noting that post-*Garner*, petitioner's claim regarding Section 8 is a question of fact that must be evaluated on case by case basis); *but see Marquez v. Rawers*, 2008 WL 704298 *8–9, 2008 U.S. Dist. LEXIS 20109 *22–24 (E.D.Cal.2008) (holding that *Garner* "does not enunciate a new standard for proving an ex post facto violation" challenge to article V, section 8(b) with citation to *Johnson*); *Walker v. Evans*, 2009 WL 385618 *3–4, 2009 U.S. Dist. LEXIS 16186 *9–10 (E.D.Cal.2009) (denying petitioner's motion for reconsideration on the grounds that *Garner* overruled *Johnson*). As the Court finds that *Garner*'s "significant risk" standard now controls the Court's inquiry, *Johnson* cannot preclude Petitioner's ex post facto claim.

### (ii) The Facts of *Johnson* are Distinguishable from Petitioner's

Respondent's motion for reconsideration mischaracterizes the basis for the Magistrate Judge's finding that Petitioner's claim is distinguishable from the claim raised in *Johnson*.[16] In the order setting the evidentiary hearing, the Magistrate

"significant risk" of prolonging his incarceration. 529 U.S. at 248, 120 S.Ct. 1362. Like *Morales, Garner* concerned a statute which changed the interval of time between proceedings to reconsider inmates for parole after an initial denial of parole. Were the statement emphasized above from *Johnson* correct, the petitioner in *Garner* would have been "unable to demonstrate that an increase in his punishment actually occurred, because, like the petitioner in *Morales*, he had not been granted parole under the old law." *Johnson*, 92 F.3d at 967–68. Contrary to the reasoning of *Johnson*, however, the *Garner* Court held that the petitioner needed to demonstrate only a significant risk of prolonged

incarceration in order to obtain relief and remanded the case to the district court for development of the factual record.

16. Respondent's motion for reconsideration states, "The magistrate judge distinguished *Johnson* stating that *Johnson* applied to a petitioner who had not been granted parole before the enactment of the constitutional amendment . . . like the petitioner in *Johnson*, Thomas had not been granted parole before the enactment . . . thus, the magistrate judge erred in distinguishing *Johnson*." (Motion for Reconsideration at 1–2). As discussed above, Respondent's statement reflects a misreading of the Magistrate Judge's order.

Judge found that "[b]ecause Petitioner's factual circumstance is distinguishable from the facts before the Ninth Circuit in *Johnson*, *Johnson* does not preclude Petitioner's ex post facto claim." (Doc. 27 at 8). In footnote four of the order setting the evidentiary hearing, the Magistrate Judge explained that Petitioner's case is distinguishable from *Johnson* because Petitioner has been granted parole on three separate occasions, whereas the Petitioner in *Johnson* had only been granted parole once. (*Id.*). The Magistrate Judge reasoned that Petitioner has established a much stronger prima facie showing that he has been harmed by article V, section 8(b) than the petitioner in *Johnson*. (*Id.*). The Court agrees. Because *Garner* requires an as-applied analysis, the factual differences between the instant case and the petitioner's case in *Johnson* preclude the Court from holding that *Johnson* forecloses Petitioner's claim as a matter of law. *See Seiler v. Brown*, 2007 WL 2501518 *5, 2007 U.S. Dist. LEXIS 66412 *13 (noting *Johnson* but proceeding to evaluate petitioner's claim under *Garner*); *Heller v. Powers–Mendoza*, 2007 WL 963330 *1 & n. 1, 2007 U.S. Dist. LEXIS 27432 *2–3 & n. 1 (noting that post-*Garner*, petitioner's claim regarding article V, section 8(b) is a question of fact that must be evaluated on case by case basis); *see also Koch v. Daniels*, 296 Fed.Appx. 621, 625–26 (10th Cir. prior published Tenth Circuit opinions had rejected ex post facto claims regarding Oklahoma parole statute at issue, prior cases "do not address the specific circumstances of Koch's case" and thus proceeding to address petitioner's unique factual circumstances).

### 4. The Court May Consider Petitioner's Subsequent Parole History as Evidence

 Respondent's final contention does not implicate the propriety of holding an evidentiary hearing. Rather, Respondent's argument, even if correct, would merely limit the scope of the evidence which may be presented at the evidentiary hearing. Respondent contends that the Magistrate Judge's order scheduling the evidentiary hearing is erroneous because it:

> opens the door for [Petitioner] to introduce evidence and challenge any subsequent denials of parole after the 2004 decision by the Governor. This is erroneous given that a petitioner who files a petition for habeas corpus in federal court ... must first exhaust state judicial remedies ... Here, any claims [Petitioner] may have that arose after the 2004 decision by the Governor are not before this court. More importantly, they may not be exhausted.

(Motion for Reconsideration at 10). Respondent's argument reflects a fundamental misunderstanding of the purpose of the Magistrate Judge's order. Respondent is correct in its assertion that any subsequent denial of parole to Petitioner cannot provide an independent basis for habeas relief in this action; the instant petition challenges only the 2004 denial of parole to Petitioner. However, Petitioner's subsequent parole history is relevant evidence for the purpose of determining whether article V, section 8(b), as applied to Petitioner, creates a significant risk of prolonging his incarceration. *See* Fed.R.Evid. 401.[17] As discussed above, a federal habeas court may consider evidence that was not before the state court. Consideration

---

**17.** The Federal Rules of Evidence apply to habeas proceedings under the AEDPA, *McDowell v. Calderon*, 107 F.3d 1351, 1368 (9th Cir.1997), subject to the limitations imposed by 28 U.S.C. § 2254(e), *see* Fed.R.Evid. 1101(e).

of new evidence does not implicate exhaustion principles unless the new evidence fundamentally alters the nature of the claim. *See, e.g., Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir.1999); *see also Burnett*, 432 F.3d at 1001 n. 7 (noting the possibility that court could expand the record to include documents produced in a separate state habeas proceeding, which occurred *after* the state's adjudication of the state habeas petition being reviewed by the court under AEDPA standards).

The evidence referred to by the Magistrate Judge does not fundamentally alter the nature of Petitioner's claim.

### Conclusion and Order

The Court finds that the petition is not moot, as the Court may remedy Petitioner's alleged injury despite Petitioner's release on parole. The Court also finds that the Magistrate Judge's order scheduling an evidentiary hearing is neither clearly erroneous nor contrary to law. Accordingly, it is HEREBY ORDERED that:

1) Respondent's request for dismissal on mootness grounds is DENIED;

2) Respondent's motion for reconsideration is DENIED;

3) The Magistrate Judge shall enter an order RESCHEDULING the evidentiary hearing in this matter.

IT IS SO ORDERED.